# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

CYNTHIA L. MERLINI,

Plaintiff-Appellant,

vs.

CANADA,

Defendant-Appellee

On Appeal from an Order of Dismissal of the
United States District Court for the District of Massachusetts

## BRIEF OF THE APPELLANT, CYNTHIA L. MERLINI

Theodore J. Folkman (No. 81828)
MURPHY & KING, P.C.
One Beacon Street
Boston, Mass. 02108
(617) 423-0400
tfolkman@murphyking.com

*Counsel for the Appellant*

# TABLE OF CONTENTS

Table of Authorities ............................................................................... iii

Reasons Why Oral Argument Should Be Heard .................................... vi

Jurisdictional Statement ............................................................................1

Issues Presented For Review ....................................................................2

Statement of the Case................................................................................2

Summary of the Argument.........................................................................5

Argument....................................................................................................8

   A.  Standard of Review.........................................................................8

   B.  Massachusetts Law Permits Employees to Sue Uninsured Employers for Workplace Personal Injuries. ................................................9

   C.  Canada Is Not Immune From Jurisdiction Under The FSIA.........................10

      1.   Merlini Alleged and Argued Below That Her Case Is Based On Her Employment By Canada. ................................................12

      2.   The Action Is Based On Merlini's Employment. ...................................13

      3.   Merlini's Employment Was Commercial. ..............................................18

      4.   Even If the Action Were Based on Canada's Decision to Self-Insure, The Commercial Activity Exception Would Apply. ........................................22

      5.   In the Alternative, the Non-Commercial Tort Exception Applies...........24

   D.  The Reviewing Board Decision Has No Issue-Preclusive Effect. ................25

Conclusion ................................................................................................31

Certificate of Compliance ..........................................................................33

Certificate of Service ................................................................................34

Addendum

## TABLE OF AUTHORITIES

## Cases

*Alicea v. Commonwealth,* 466 Mass. 228, 993 N.E.2d 725 (2013).................. 29, 30

*Barrett v. Transformer Serv., Inc.,* 374 Mass. 704, 374 N.E.2d 1325 (1978).........31

*Butters v. Vance Int'l, Inc.,* 225 F.3d 462 (4th Cir. 2000)........................19

*El-Hadad v. United Arab Emirates,* 496 F.3d 658 (D.C. Cir. 2007).......... 19, 20, 21

*Fagot Rodriguez v. Republic of Costa Rica,* 297 F.3d 1 (1st Cir. 2002).......... 14, 25

*Holden v. Canadian Consulate,* 92 F.3d 918 (9th Cir. 1996)......................... passim

*Janini v. Kuwait University,* 43 F.3d 1534 (D.C. Cir. 1995)........................... 16, 17

*Kato v. Ishihara,* 360 F.3d 106 (2d Cir. 2004) ................................. 20, 21

*Kosereis v. Rhode Island,* 331 F.3d 207 (1st Cir. 2003)..........................26

*Kuwait Airways Corp. v. Iraq,* [2010] 2 S.C.R. 571 (Can.) ....................................11

*Lavoie's Case,* 334 Mass. 403, 135 N.E.2d 750 (1956) ..........................31

*OBB Personenverkehr AG v. Sachs,* 136 S. Ct. 390 (2015) ............................ 14, 17

*Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607 (1992)................................23

*Rush-Presbyterian-St. Luke's Medical Center v. Hellenic Republic,* 877
   F.2d 574 (7th Cir. 1989).............................................................. 23, 24

*Rutanen v. Baylis (In re Baylis),* 217 F.3d 66 (1st Cir. 2000). ................... 27, 28, 29

*Saudi Arabia v. Nelson,* 507 U.S. 349 (1993) ................................................ passim

*Schreiber v. Canada (Att'y Gen.),* [2002] 3 S.C.R. 269 (Can.)...............................20

*Segni v. Commercial Office of Spain,* 835 F.2d 160 (7th Cir. 1987).....................19

*Truong v. Wong,* 55 Mass. App. Ct. 868, 775 N.E.2d 405 (2002) ..........................10

*United States v. Zakhary,* [2015] F.C. 335 (Fed. Ct.).............................................20

*Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Interests in Int'l & Foreign Courts,* 727 F.3d 10 (1st Cir. 2013) ...................9, 14

*Valentin v. Hosp. Bella Vista,* 254 F.3d 358 (1st Cir. 2001) ...................................21

*Verlinden B.V. v. Cent. Bank of Nigeria,* 461 U.S. 480 (1983) ..............................11

## Statutes

28 U.S.C. § 1291 ......................................................................................................1

28 U.S.C. § 1330(a) .................................................................................................1

28 U.S.C. § 1602 ....................................................................................................11

28 U.S.C. § 1603(d) ......................................................................................... 22, 23

28 U.S.C. § 1603(e) ...............................................................................................22

28 U.S.C. § 1604 ....................................................................................................10

28 U.S.C. § 1605(a)(2) ................................................................................... 1, 11, 24

28 U.S.C. § 1605(a)(5) ................................................................................... 1, 12, 24

28 U.S.C. § 1605(a)(5)(A) .................................................................................. 12, 25

28 U.S.C. § 1606 ....................................................................................................11

Mass. Gen. Laws ch. 110A, § 402(a)(2) .................................................................26

Mass. Gen. Laws ch. 151A, § 6(m) ........................................................................26

Mass. Gen. Laws ch. 152, § 1(4) .............................................................................9

Mass. Gen. Laws ch. 152, § 1(5) .............................................................................9

Mass. Gen. Laws ch. 152, § 25A ...........................................................................9, 23

Mass. Gen. Laws ch. 152, § 65(2) ..........................................................................31

Mass. Gen. Laws ch. 152, § 66 ................................................................... 2, 4, 9, 10

Mass. Gen. Laws ch. 152, § 67 ...............................................................................10

iv

State Immunity Act, R.S.C. 1985, c. S-18, § 5 ........................................................11

State Immunity Act, R.S.C. 1985, c. S-18, § 6(a) ..................................................12

Other Authorities

18 Charles A. Wright *et al., Federal Practice & Procedure* § 4421 (3d ed. 2016) ............................................................................................................29

29 Leonard Y. Nason *et al.,* Mass. Practice *Workers' Compensation* § 26.6 (3d ed. 2003) .................................................................................................9, 17

29 Leonard Y. Nason et al., Mass. Practice *Workers' Compensation* § 5.9 (3d ed. 2003) ...................................................................................................31

H.R. Rep. No. 94-1847 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 6604 .............19

Letter from Office of Diplomatic Law and Litigation of the Office of the Legal Adviser (Sept. 11, 1990), *1989-90 Digest of United States Practice in International Law 1989-1990,* ch. 10, § E(4)(c) ..................................................26

*Restatement (Third) of the Foreign Relations Law of the United States,* Part IV, Ch. 5, Subch. B, Intro. Note (1987) ...................................................................26

## REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

This case provides a first opportunity for this Court to apply the "gravamen" test of *Saudi Arabia v. Nelson,* 507 U.S. 349 (1993), to decide a dispute about which conduct constitutes the basis of a claim against a foreign sovereign. The case also presents an important question of first impression: when a foreign government that has failed to purchase workers' compensation insurance employs clerical workers in the United States, and the workers are injured, is the foreign state immune from suit for personal injury?

# JURISDICTIONAL STATEMENT

The defendant, Canada ("Canada", or "the Consulate"), is a foreign state. The plaintiff, Cynthia L. Merlini ("Merlini"), sued Canada and pleaded that her claims were based on Canada's commercial activities carried out in the United States, namely Canada's employment of Merlini in the United States, in the course of which she suffered an injury in the United States. In the alternative, she pleaded that her action was an action seeking money damages for personal injury occurring in the United States and caused by negligence of another employee of Canada in the United States. Thus she asserted that the commercial activity exception, 28 U.S.C. § 1605(a)(2), or the non-commercial tort exception, 28 U.S.C. § 1605(a)(5), to foreign sovereign immunity applied and that the District Court had subject-matter jurisdiction under 28 U.S.C. § 1330(a) (A6).

The District Court held that neither exception applied and dismissed the action for lack of subject-matter jurisdiction. (Add. 9). This appeal is from that order, which is a final decision that disposes of all parties' claims. This Court has jurisdiction under 28 U.S.C. § 1291.

The District Court's order was entered on December 7, 2017 (Add. 11), and Merlini filed her notice of appeal on December 8, 2017 (A59). The appeal is therefore timely.

## ISSUES PRESENTED FOR REVIEW

Canada, which operates a consulate in Boston, did not obtain workers' compensation insurance or a license to self-insure, as Massachusetts law requires. Merlini, an American clerical employee, was injured on the job. Merlini sued under Mass. Gen. Laws ch. 152, § 66, the Massachusetts statute on personal injury claims against uninsured employers. Is Canada immune from suit notwithstanding the commercial activity exception to foreign sovereign immunity?

Merlini's injury was caused by the negligence of a second employee of the Consulate, who failed to secure a telephone cord to the floor. If the commercial activity exception does not apply, is Canada immune from suit notwithstanding the noncommercial tort exception to foreign sovereign immunity?

## STATEMENT OF THE CASE

In 2003, the Consulate hired Merlini, an American citizen and a resident of Massachusetts, as an assistant to the Consul General. The Consulate hired her in Massachusetts, and her place of work was in Massachusetts. (A6).

Merlini's duties were purely clerical, and comparable to the duties of an assistant or secretary to an executive in any private firm. She answered the phones, maintained files, typed letters, and did other secretarial work. (A7). She was not a consular officer. She had no governmental, consular, diplomatic, or official duties. She took no competitive examination before hiring, and she was not entitled to

tenure protections, or to the employment benefits Canadian foreign service officers received. (A7).

In 2009, Merlini was setting up a coffee and tea service for a meeting at the Consulate. Another employee of the Consulate had negligently failed to secure a speakerphone cord to the floor, and as a result of his negligence, Merlini tripped over the cord, got tangled in it, and fell, striking a credenza. As a result of the workplace accident, she suffered a serious injury that left her unable to work. (A7).

The Consulate had not purchased workers' compensation insurance or obtained a license to self-insure, as required by Massachusetts law. (A8). It gave Merlini none of the notices of her rights that Massachusetts law required. (A8). Instead, it paid her benefits under its own workers' compensation law for a period of several months, but it then ceased paying. (A8).

Merlini then brought an administrative claim against the Massachusetts Workers' Compensation Trust Fund, a fund that provides benefits to injured workers whose employers have failed to comply with the workers' compensation statute. Canada participated in the proceedings. (A8).

After an evidentiary hearing, the administrative judge found that Merlini was entitled to permanent and total incapacity benefits and other benefits. (A8). But the Trust Fund appealed to the Department of Industrial Accidents Reviewing Board, and after lengthy proceedings, the Reviewing Board held that Merlini was not

entitled to benefits from the Trust Fund. (A8-9). Its holding rested on three independent grounds. *First,* it held that the Consulate was not "subject to the personal jurisdiction of the Commonwealth," as required by the statute governing claims against the Trust Fund. (Add. 14-16). *Second,* it held that Canada was not uninsured in violation of the statute, because it had sovereign immunity. (Add. 16-19). *Third,* it held that the Fund is not liable if the injured worker was entitled to workers' compensation benefits in any other jurisdiction, and that Merlini was in fact entitled under Canadian law to the benefits Canada had paid her. (Add. 20-22).

Merlini appealed as of right to the Appeals Court. In 2016, over seven years after Merlini's accident, the court affirmed. The sole basis for its decision was the third holding: the court agreed with the Reviewing Board that Merlini had been entitled under Canadian law to the benefits Canada had paid her. (Add. 27). The court expressly declined to rule on the other two bases for the Reviewing Board's decision. (Add. 28).

Merlini then brought this action under Mass. Gen. Laws ch. 152, § 66, the statute that permits personal injury actions against employers who have neither purchased insurance nor obtained a license from the Department of Industrial Accidents to self-insure. She alleged that her action was "based on Canada's commercial activities in the United States, namely, its employment of Merlini at

the Consulate." (A6). In the alternative, she alleged that the action was based on the negligence of the employee who failed to secure the telephone cord. (A6).

Canada moved to dismiss on two grounds. First, it argued that neither the commercial activity exception nor the noncommercial tort exception to its foreign sovereign immunity applied. Second, it argued that Merlini had failed to state a claim on which relief could be granted, because the DIA Reviewing Board had already held that Canada was not uninsured in violation of the statute. Canada claimed the Reviewing Board's decision on that issue had issue-preclusive effect. (Add. 4). Canada did not, however, defend the merits of the Reviewing Board's decision or even suggest that the Reviewing Board's decision was defensible.

The District Court granted the motion to dismiss on the grounds that no exception to foreign sovereign immunity applied. (Add. 9). It did not reach the question of issue preclusion. This appeal followed.

## SUMMARY OF THE ARGUMENT

Under the restrictive theory of foreign sovereign immunity embodied in the Foreign Sovereign Immunities Act, a foreign state is immune from suit with respect to its public acts but not its commercial acts. The two exceptions to the ordinary presumption of foreign sovereign immunity that are relevant here are the commercial activity exception and the non-commercial tort exception. A foreign state is not immune from suit if the claim is based on its commercial activities in

the United States. Nor is it immune if the claim is a tort claim for personal injuries, provided that the claim is not based upon the performance of a discretionary function, or the failure to perform such a function.

Canada claims that Merlini's action is based on its decision to self-insure rather than to comply with Massachusetts' workers' compensation law. The District Court wrongly thought that the parties were in agreement on that point. In fact, as the complaint and the motion papers show, Merlini challenged Canada's argument and asserted instead that the action was based on her employment by Canada in Massachusetts.

In fact, the action *was* based on Merlini's employment, not Canada's decision to self-insure. In order to determine what an action is based on for purposes of deciding a foreign sovereign immunity issue, the Court must look to the particular conduct that constitutes the gravamen of the suit. Here, the gravamen was plainly Merlini's employment and her personal injury, as the precedents from both the Supreme Court and circuits around the country show. Any employer can be uninsured for many reasons, and no matter what the reason, Merlini's claim would be the same. So Canada's decision to self-insure is incidental to the case. On the other hand, Merlini's employment in Massachusetts and her injury in Massachusetts are at the heart of the case, since there could be no case without them.

Merlini's employment was commercial. The legislative history of the Foreign Sovereign Immunities Act shows that Congress intended to distinguish clerical staff and similar workers from workers performing official or governmental tasks and to treat the employment of clerical workers as commercial. This is precisely what the cases have done. Indeed, the courts have found that even employees with significant supervisory responsibilities or whose jobs involved directly seeking to advance the policies of the foreign state are commercial employees. No matter where one draws the line, given the allegations of the complaint, Merlini is clearly on the commercial side of it.

Even if Canada were right and the case were based on Canada's decision to self-insure, its decision was commercial. The commercial character of an activity must, under the FSIA, be determined by reference to its nature rather than its purpose, and the commercial activity is "carried on in the United States" if it has substantial contact with the United States. Here, Canada did what many other employers do for many reasons: fail to obtain insurance or a license as a self-insurer. Canada says that its decision was a policy decision and that it had sound reasons for wanting to apply the same law to all of its consular employees around the world. But the same is true of every private firm that does business in many jurisdictions. There is nothing peculiarly sovereign about Canada wanting what any business would want: a single regulatory regime in multiple jurisdictions.

In the alternative, the case comes within the noncommercial tort exception to FSIA immunity. Merlini alleged that her accident was caused by the negligence of a fellow employee who failed to secure a cord to the floor. That failure was not a failure to perform a discretionary function. The action is not based on Canada's decision to self-insure for the reasons already given.

Although the District Court did not rule on the issue, Canada argued below that Merlini had failed to state a claim on which relief could be granted because the Reviewing Board had already held that Canada was not uninsured in violation of the statute, and because its decision was entitled to issue-preclusive effect. This argument lacks merit. Massachusetts preclusion law governs here. The Reviewing Board's decision was based on three grounds, each of which would have been sufficient on its own to support to holding. Because the Appeals Court affirmed on the basis of one of the three grounds, and expressly refused to rule on the others, the others—including the conclusion that Canada was not uninsured in violation of the statute—can have no preclusive effect.

## ARGUMENT

A.    Standard of Review.

Because the District Court dismissed the action for lack of subject-matter jurisdiction on the face of the complaint, this Court reviews its decision *de novo*.

*Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Interests in Int'l & Foreign Courts,* 727 F.3d 10, 15 (1st Cir. 2013).

B.    Massachusetts Law Permits Employees to Sue Uninsured Employers for Workplace Personal Injuries.

Massachusetts law requires every "employer" (with limited exceptions) to provide compensation for injured employees by "insurance with an insurer" or by "obtaining from the [Department of Industrial Accidents] annually a license as a self-insurer." Mass. Gen. Laws ch. 152, § 25A. An "employer" is a person or entity "employing employees subject to this chapter," with exceptions not relevant here. Mass. Gen. Laws ch. 152, § 1(5). An "employee" is a person "in the service of another under any contract of hire, express or implied, oral or written," again with exceptions not relevant here. *Id.* § 1(4). The statute is to be construed "broadly to include as many employees as its terms will permit." *Warren's Case,* 326 Mass. 718, 719, 97 N.E.2d 184, 186 (1951).

The law encourages employers to comply with a carrot and a stick. The carrot is "immunity from actions at law for personal injuries." The stick is the abolition of several common-law defenses to actions for personal injuries. *See* 29 Leonard Y. Nason *et al.,* Mass. Practice *Workers' Compensation* § 26.6 (3d ed. 2003).

Section 67 of the workers' compensation law is the carrot. It provides that § 66, the statute concerning actions for personal injuries, "shall not apply to actions

to recover damages for personal injuries received by employees of an insured person or a self-insurer." Mass. Gen. Laws ch. 152, § 67.

Section 66 is the stick. It provides that in a personal injury action against an uninsured employer, the employer cannot assert contributory negligence, the fellow-servant rule, or assumption of risk as defense. It also provides that the employee need not prove that the employer was negligent or otherwise at fault, as long as the injury arose out of and in the course of employment. Mass. Gen. Laws ch. 152, § 66.

In summary, in light of these two statutes, "[i]f an employer fails to provide … coverage, an injured employee may sue the employer in a civil action for the full scope of tort damages," and "the employer may not assert certain critical common-law defenses." *Truong v. Wong,* 55 Mass. App. Ct. 868, 869, 775 N.E.2d 405, 407 (2002).

C.      Canada Is Not Immune From Jurisdiction Under The FSIA.

Canada is presumptively immune from the jurisdiction of US courts under the Foreign Sovereign Immunities Act ("the FSIA") because it is a foreign state. 28 U.S.C. § 1604. But foreign states are not always entitled to immunity under the FSIA. The Act embodies the restrictive theory of foreign sovereign immunity, under which a foreign state has immunity in suits involving its "public acts" but not its "commercial acts." *Verlinden B.V. v. Cent. Bank of Nigeria,* 461 U.S. 480,

486-88 (1983). The FSIA provides a general rule of immunity and then specifies exceptions, including the two exceptions at issue here: an exception for a foreign state's commercial activities; and an exception for its non-commercial torts. "When one of these … exceptions applies, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances." *Id.* at 488-89 (quoting 28 U.S.C. § 1606). The United States recognizes the restrictive theory of immunity as customary international law, *see* 28 U.S.C. § 1602, as does Canada, *see Kuwait Airways Corp. v. Iraq,* [2010] 2 S.C.R. 571 para. 13 (Can.).

We assert two relevant exceptions to Canada's foreign sovereign immunity. First, under the commercial activity exception, a foreign state is not immune from jurisdiction in a case "in which the action is ***based upon*** a commercial activity carried on in the United States by the foreign state …" 28 U.S.C. § 1605(a)(2) (emphasis supplied). Canada recognizes a similar exception to foreign sovereign immunity. *See* State Immunity Act, R.S.C. 1985, c. S-18, § 5 ("A foreign state is not immune from the jurisdiction of a court in any proceedings that relate to any commercial activity of the foreign state.").

Second, under the non-commercial tort exception, a foreign state is not immune in a case not within the commercial activity exception "in which money damages are sought against a foreign state for personal injury … occurring in the

United States and caused by the tortious act or omission of … any official or employee of that foreign state while acting within the scope of his office or employment." 28 U.S.C. § 1605(a)(5). But the non-commercial tort exception does not apply to claims "***based upon*** the exercise or performance or the failure to exercise or perform a discretionary function …" 28 U.S.C. § 1605(a)(5)(A) (emphasis supplied). Again, Canada recognizes a tort exception in personal injury cases. *See* State Immunity Act, *supra* § 6(a) ("A foreign state is not immune from the jurisdiction of a court in any proceedings that relate to any death or personal or bodily injury").

    1.    <u>Merlini Alleged and Argued Below That Her Case Is Based On Her Employment By Canada.</u>

Before turning to the merits, we must address the District Court's clear misreading of the complaint and the motion papers, which influenced its decision. The allegation in the complaint is that the action "is based on Canada's employment of Merlini at the Consulate" (A6). Merlini argued in motion papers that while *Canada* had argued that the claim was based on "the Canadian government's sovereign decision to flout the Massachusetts workers' compensation law," it was *in fact* "based on Canada's employment of Merlini in Massachusetts" (A34, A41-43). In other words, Merlini plainly did not agree with Canada's position that the case was "based on" its policy decisions in the case below, and there is nothing in the record to suggest otherwise.

Nevertheless, the District Court began its discussion by observing, wrongly, that "***[p]laintiff contends*** that her claim is 'based upon' defendant's decision to provide its own system of benefits to its employees" (Add. 7) (emphasis supplied). This was a plain misreading of the complaint and Merlini's motion papers, and the District Court cited nothing in the record to support the misreading. In fact, there is nothing to support it. To the contrary, Merlini argued at length that her claim "has nothing to do with Canadian governmental decisions made in Ottawa" (A43).

The District Court's mistake was material. The District Court never engaged with, let alone decided, the main challenge Merlini presented to the motion to dismiss, namely, that contrary to Canada's arguments, the action was *not* based on its decision not to obtain insurance, but rather on Merlini's employment in Massachusetts and her workplace injury.

2.  The Action Is Based On Merlini's Employment.

To determine what an action is "based upon" for purposes of the commercial activity exception to FSIA immunity, courts look to "those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." *Saudi Arabia v. Nelson,* 507 U.S. 349, 357 (1993). On the one hand, this does not mean that "each and every element of a claim" must be a "commercial activity by a foreign state" in order for the exception to apply. *Id.* at 358 n.4. On the other hand, it does not mean that a claim comes within the exception if a single element of the

claim is a commercial activity by the foreign state. *See OBB Personenverkehr AG v. Sachs,* 136 S. Ct. 390, 395-96 (2015) (rejecting the Ninth Circuit's "one-element approach"). It does mean that courts should not undertake a "claim-by-claim, element-by-element" analysis of the complaint, but rather identify the "particular conduct that constitutes the gravamen of the suit." *Sachs,* 136 S. Ct. at 396 (citing *Nelson*) (internal quotation marks omitted).

This Court has not yet had occasion to consider how to apply *Nelson's* "gravamen" test to determine what conduct constitutes the gravamen of the case.[1] By outlining the elements of her claim and comparing Merlini's case with the facts of *Nelson* and *Sachs,* the two leading Supreme Court cases, and decisions from other Courts of Appeals, we will show that the gravamen of Merlini's claim was not Canada's decision to self-insure and thus that Canada's argument must fail.

*Nelson* and *Sachs* were both personal injury cases where the injury took place abroad. In *Nelson,* the plaintiff was hired by the Saudi government in the United States to work at a hospital in Saudi Arabia. After he began work, he blew the whistle on safety violations. He alleged the Saudi government then arrested,

---

[1] In both of the reported cases in which the Court has cited *Nelson,* there was no question about identifying the conduct on which the case was based. The question was whether the conduct amounted to a commercial activity with sufficient connections to the United States. *See Fagot Rodriguez v. Republic of Costa Rica,* 297 F.3d 1 (1st Cir. 2002); *Universal Trading, supra.*

imprisoned, and tortured him. The Court held that the gravamen of the claim was the personal injury resulting from the arrest, imprisonment, and torture (which, the Court held, was the act of the Saudi government as a sovereign, not a commercial activity of the government). His recruitment and employment in the United States were not the gravamen: even taking his allegations about those facts as true, "those facts alone entitle the Nelsons to nothing under their theory of the case." *Nelson* 507 U.S. at 358.

In *Sachs,* the plaintiff purchased an Austrian railway ticket in the United States from an alleged agent of the Austrian government. In Austria, she suffered a personal injury while boarding the train. The Court held that the gravamen of the claim was the personal injury in Austria, not the purchase of the ticket in the United States. *Sachs,* 136 S. Ct. at 396.

> A century ago, in a letter to then-Professor Frankfurter, Justice Holmes wrote that the "essentials" of a personal injury narrative will be found at the "point of contact"—"the place where the boy got his fingers pinched." At least in this case, that insight holds true.

*Id.* at 397 (citation omitted).

The facts of *Nelson* and *Sachs* contrast strongly with the facts of the cases in which courts have found that the action is based on commercial activity in the United States. In *Holden v. Canadian Consulate,* 92 F.3d 918 (9th Cir. 1996), for instance, Holden, an American employee of the Canadian consulate in San Francisco was laid off when the consulate closed. A smaller satellite office opened

15

to replace it, and Holden lost a competition for a spot at the new office to a younger, male worker. She brought a claim for sex and age discrimination. Canada, as it does here, asserted that the claim was based on its sovereign decision to close the consulate. But the court rejected that argument, finding that the claim was based upon the (allegedly wrongful) termination of the employment, not upon the closure of the consulate. *Holden,* 92 F.3d at 920-21.

*Janini v. Kuwait University,* 43 F.3d 1534 (D.C. Cir. 1995), is similar. Janini was hired to teach chemistry at Kuwait University, and he worked there under a series of employment contracts. The last, beginning in 1989, had a four-year term. After the Iraqi invasion, Kuwait issued a government decree abrogating all governmental contracts with non-Kuwaiti nationals on *force majeure* grounds. Kuwait claimed the action was based on its sovereign decision to issue its decree, while Janini argued that the action was based on Kuwait's recruitment of him or on pre-contract negotiations, which took place in the United States. The court rejected both arguments, holding that the gravamen of the case was the breach of the contract.[2] *Janini,* 43 F.3d at 1536-37.

---

[2] But Janini did not win outright; the court remanded for a consideration of whether the termination of the contract, which was a commercial activity, was sufficiently connected to the United States. *Id.* at 1537. There is no similar issue here: Merlini was employed and injured in the United States; the only thing that happened in Canada was the governmental decision to self-insure without a license.

*Nelson* and *Sachs* were cases in which the injured plaintiff was seeking to avoid dismissal by pointing to something other than the obvious gravamen of the case as the relevant commercial activity. *Holden* and *Janini* are cases in which the foreign sovereign was seeking to obtain dismissal by pointing to something other than the obvious gravamen of the case as the relevant commercial activity. The courts rejected both efforts, instead "zero[ing] in on the core of [the] suit," *Sachs,* 136 S. Ct. at 396.

In order to prove her case, Merlini will have to prove (1) that Canada was required to provide for payment of compensation under the workers' compensation statute; (2) that Canada failed to do so; (3) that Canada was Merlini's employer; and (4) that Merlini sustained a personal injury arising out of and in the course of her employment. *See* Nason, *supra* § 26.6. The key here is the second element: Canada's failure to have insurance. What *Holden* and *Janini* show is that a foreign sovereign cannot avoid jurisdiction by simply characterizing an ordinary commercial act or omission—here, the failure to purchase insurance or to obtain a license as a self-insurer; in *Janini* a breach of contract; in *Holden* employment discrimination—as the result of some sovereign decision.

Merlini's case is *Nelson* flipped on its head. In *Nelson,* the gravamen was the alleged intentional torts in Saudi Arabia, and what the plaintiff alleged was the gravamen—the recruitment and hiring—were entirely incidental. The wrong and

the injury that were at the center of the case would have been precisely the same even if Nelson had been hired in Saudi Arabia, or in a third country, or if he had never been hired at all but arrested, imprisoned, and tortured for some other reason. Similarly, in *Sachs,* the injury would have been the same no matter where Sachs bought her ticket. But in Merlini's case, there would have been no workplace injury and thus no cause of action if Merlini had not been employed by the Consulate and working on its premises.

In Merlini's case, it is Canada's decision to self-insure that was entirely incidental. There are many ways an employer can come to be uninsured. An employer might be ignorant of the law. An employer might inadvertently let coverage lapse. An employer might decide to self-insure but fail to obtain a license. Or, as in this case, an employer that happens to be a foreign government might (wrongly) believe that it could self-insure by applying its own laws instead of Massachusetts law to Massachusetts employees. Merlini's claim would be precisely the same in any of these scenarios, which is precisely why Canada's decision to self-insure cannot be the gravamen of the claim.

3.     <u>Merlini's Employment Was Commercial.</u>

There is no doubt that Merlini's employment was "commercial." Both the legislative history of the FSIA and the cases show that the employment of even embassy or consular employees with significantly more responsibility than Merlini

is treated as commercial for FSIA purposes. *See* H.R. Rep. No. 94-1847, at 16

(1976), *as reprinted in* 1976 U.S.C.C.A.N. 6604, 6615 ("employment or

engagement of laborers, clerical staff or public relations or marketing agents"

should be treated as commercial activity); *Holden,* 92 F.3d at 920 (in employment

discrimination case, employee was "commercial officer" responsible for

"responding to inquiries from Canadian companies"); *Segni v. Commercial Office

of Spain,* 835 F.2d 160 (7th Cir. 1987) (in breach of employment contract case,

employee responsible for "developing the marketing of Spanish wines" in

America); *El-Hadad v. United Arab Emirates,* 496 F.3d 658 (D.C. Cir. 2007) (in

breach of employment contract and defamation case, employee was accountant

with supervisory authority over other accountants at the embassy).

There are cases where the employment of a particular worker is *not*

commercial. No doubt the employment of diplomatic or consular officials, military

attachés, and the like is not a commercial activity. And when an employee is hired

to do something that really is peculiar to sovereigns—provide personal protection

to a member of the foreign country's royal family, for example—that employment

is not a commercial activity either. *See Butters v. Vance Int'l, Inc.,* 225 F.3d 462

(4th Cir. 2000). Or when a worker is a national of the foreign state and a civil

servant who won her job through a competitive examination, had lifetime tenure,

and was required to rotate through various posts in the United States and elsewhere

as part of a standard rotation program, her employment is similarly non-commercial. *See Kato v. Ishihara,* 360 F.3d 106 (2d Cir. 2004). But while no private business has a royal family to guard, and no private business can enact its own civil service laws, every private business has secretaries and administrative assistants to do their clerical work.

Although both the United States and Canada apply the restrictive theory of sovereign immunity, the characterization of the employment of certain embassy and consular employees as commercial may be an area where the law of the two countries diverges. In a recent decision by the Federal Court (the first-instance federal court in the Canadian system), a Canadian judge held that employment at a foreign consulate is not commercial "whether administrative, clerical, or … financial." *United States v. Zakhary,* [2015] F.C. 335 para. 31 (Fed. Ct.).[3]

But the American decisions do not take this categorical view. Instead, our cases, mindful of Congress's intent, seek to distinguish the commercial from the non-commercial based on the nature of the employment. As *El-Hadad* puts it, the

---

[3] That is not to say that Canada provides greater protection to foreign sovereigns than does the United States as a general matter. Indeed, in the context of tort claims for personal injury, Canada provides significantly less protection. In that context, Canadian law does not distinguish between sovereign acts and commercial acts. *See Schreiber v. Canada (Att'y Gen.),* [2002] 3 S.C.R. 269, para. 31-37 (Can.). But as we explain below (Section C.5), the United States grants immunity to foreign sovereigns in tort cases where the claim is based on the exercise or failure to exercise a discretionary function.

test is really whether the employee is a "civil servant" (as in, for example, *Kato, supra*), and if not, whether her work "involves the exercise of powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns." *El-Hadad,* 496 F.3d at 664 (citation and internal quotation mark omitted). They consider several factors: Was the worker a civil servant under the foreign country's law? Was there a contract of employment, or did the employment relationship arise solely from the civil service laws of the foreign state? Did the worker have to sit for a competitive examination, or did she have tenure protection? Did she have the same benefits as a foreign service officer, or civil service protections? Did the worker ever work in the foreign country, and if so, what was the nature of the work? Is the worker a national of the foreign state? Perhaps most importantly in light of the legislative history quoted above: what was the nature of the worker's work? *See El-Hadad,* 496 F.3d at 665; *Holden,* 92 F.3d at 921.

Canada elected to move to dismiss on the face of the complaint, without submitting any evidence to the District Court. *See Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 363 (1st Cir. 2001) (distinguishing facial and factual challenges to subject-matter jurisdiction). And on the face of the complaint, it is abundantly clear that no matter where one draws the line between commercial and non-commercial employment, Merlini falls on the commercial side of the line. She is an American

citizen and is not also a Canadian citizen. Her duties were purely clerical and secretarial. She had no governmental, consular, diplomatic, or other official tasks. She took no competitive examination. She was not entitled to tenure and did not have the same employment benefits as foreign service officers. (A6-7). She is the archetypical "clerical staff" worker whose employment Congress intended would be treated as commercial.

4.    <u>Even If the Action Were Based on Canada's Decision to Self-Insure, The Commercial Activity Exception Would Apply.</u>

Even if Merlini's action is based upon Canada's decision to self-insure, that decision was a commercial activity carried on in the United States that brings the case within the commercial activity exception to foreign sovereign immunity. "The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d). And a commercial activity is "carried on in the United States by a foreign state" if it is carried on by the foreign state and has a "substantial contact with the United States." 28 U.S.C. § 1603(e).

Being uninsured is something any employer can do, wittingly or unwittingly. *Contrast, e.g., Nelson,* 507 U.S. at 361 (only a foreign sovereign can exercise the police power). The District Court reasoned that "the decision to create and organize a workers' compensation program is sovereign in nature" (Add. 7). But *any* employer can choose to self-insure: it need only obtain a license. Mass. Gen.

22

Laws c. 152, § 25A. In that sense, the case is like *Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607 (1992), where Argentina faced a claim for breach of contract after it defaulted on its bonds. Argentina pointed to the governmental purposes for its bond issuance, namely to refinance earlier sovereign debt, but the Court, "[a]ssuming for the sake of argument that this is not an example of judging the commerciality of a transaction by its purpose," noted that private firms could issue bonds precisely for the reasons Argentina had. *Id.* at 616.

Moreover, as the Court's assumption for the sake of argument suggests, the District Court's view looked to the purpose of Canada's decision—to provide benefits to its employees—rather than to the nature of Canada's action, which was simply to fail to buy insurance or to obtain a license to self-insure.

This is precisely what the statute forbids. *See* 28 U.S.C. § 1603(d). In the District Court, Canada pointed to the policy considerations that led it to favor applying its own law uniformly rather than having to apply the law of each jurisdiction where it had a consulate or embassy. But those considerations are faced by every private firm that does business around the world. *Every* business would prefer to have to comply with one regulatory regime worldwide rather than face a patchwork of regulation.

The case is similar to *Rush-Presbyterian-St. Luke's Medical Center v. Hellenic Republic,* 877 F.2d 574 (7th Cir. 1989). There, the Greek government had

contracted with American doctors to perform organ transplant surgeries on Greek citizens. The government then failed to pay. It argued that the provision of healthcare to its citizens was "not a commercial activity, but a governmental one." *Id.* at 580. But the court rejected the argument, which "impermissibly departs from the 'nature' of Greece's conduct, and instead focuses primary attention on the 'purpose' for which Greece" made the contract:

> Rather than look to the purpose of the agreement, we must ask whether private parties ever enter contracts to reimburse health care providers for medical services performed on third parties, assuming that the private party has a preexisting obligation to attend to the third parties' medical needs.

*Id.* at 580-81.

The analogous question here is whether private parties ever fail to obtain workers' compensation insurance or to license as self-insurers when they have an obligation to provide insurance. The answer, of course, is yes. And the private parties' *reasons* are irrelevant.

5. In the Alternative, the Non-Commercial Tort Exception Applies.

The non-commercial tort exception, which can apply only to the cases not within the commercial activity exception, *see* 28 U.S.C. § 1605(a)(5) (cases "not otherwise encompassed in [§ 1605(a)(2)]"), comes into play when the action seeks damages for personal injury occurring in the United States and "caused by the tortious act or omission" of an employee of the foreign state "while acting within the scope of his office or employment." *See id.* Here, the action is for damages; the

personal injury occurred in the United States; Merlini alleged that an employee of Canada negligently failed to secure a cord to the floor, causing the accident. (A7).

The non-commercial tort exception has its own exception: it does not apply to cases "based upon the exercise or performance or the failure to exercise or perform a discretionary function." 28 U.S.C. § 1605(a)(5)(A). This Court has previously considered the test to decide whether a particular course of conduct was discretionary but not whether a case is "based upon" that particular course of conduct. *See Fagot Rodriguez v. Republic of Costa Rica,* 297 F.3d 1, 8-9 (1st Cir. 2002. There can be no question that a failure to secure a cord, creating a trip hazard, is not the kind of discretionary decision that the exception protects. But the District Court took it as a given that the case was based not on the negligence of the Consulate's employee but rather on Canada's decision to self-insure. The argument in section C.2, *supra,* applies here with full force. Despite Canada's arguments, Merlini's claim is not based on policy decisions made in Ottawa but on an injury that occurred in the course of her employment in Massachusetts.

D.    The Reviewing Board Decision Has No Issue-Preclusive Effect.

Rather than argue to the District Court that the Reviewing Board's decision on Canada's obligation to purchase insurance or obtain a license to self-insure was

substantively correct,[4] Canada instead argued simply that it had issue-preclusive effect. This Court applies Massachusetts preclusion law to determine whether the Reviewing Board's decision has any preclusive effect. *See Kosereis v. Rhode Island,* 331 F.3d 207, 212 (1st Cir. 2003).

---

[4] Because Canada did not argue the substantive issue to the District Court and the District Court did not decide it, we do not address it in detail here. The United States' view is that "as employers in the United States, [foreign] missions are subject to relevant federal and state employment laws and regulations unless they are exempted from these rules by U.S. or international law," and there is "no U.S. law, treaty provision, or rule of customary international law … that exempts a sending state from participating in a workers compensation plan if local law so requires." Letter from Office of Diplomatic Law and Litigation of the Office of the Legal Adviser (Sept. 11, 1990), *1989-90 Digest of United States Practice in International Law 1989-1990,* ch. 10, § E(4)(c), at 391-93. And the foreign state's obligation to obey the law is separate and independent from the question of foreign sovereign immunity from suit: "In general, unless otherwise provided by special agreement, activities of a foreign state, whether they are 'governmental' or 'commercial' in character, are subject to local law, though as to the former the foreign state is immune from enforcement of that law by domestic courts, administrative bodies, or police action." *Restatement (Third) of the Foreign Relations Law of the United States,* Part IV, Ch. 5, Subch. B, Intro. Note (1987). Nothing in the workers' compensation law exempts consulates or foreign governmental employers. The statute contrasts with others, such as the unemployment insurance statute, which expressly excludes "service performed in the employ of a foreign government, including service as a consular or other officer or employee," from the scope of "employment" for purposes of the statute. *See* Mass. Gen. Laws ch. 151A, § 6(m); *see also* Mass. Gen. Laws ch. 110A, § 402(a)(2) (exempting foreign governments, and Canada specifically, from compliance with the blue sky laws with respect to their securities). The legislature knows how to exempt foreign governments from compliance with generally applicable Massachusetts law when it wishes.

The key principle is that because the Reviewing Board's decision rested on three independent grounds, any one of which would have been sufficient to support the result, because Merlini appealed all three grounds to the Appeals Court as of right, and because the Appeals Court affirmed on one ground only and expressly declined to "address whether the Canadian government is subject to the jurisdiction of the Commonwealth or whether the Consulate was an 'uninsured employer' in violation of G.L. c. 152" (Add. 9), the decision has no preclusive effect as to the two unreviewed issues. *See Rutanen v. Baylis (In re Baylis),* 217 F.3d 66 (1st Cir. 2000).

In *Baylis,* beneficiaries of a trust sued the trustees in the Probate and Family Court, claiming that they had negligently breached their fiduciary duties and that they had acted in bad faith. The judge entered a judgment for the beneficiaries, finding that they had proved both their claims. The Appeals Court affirmed on both grounds. On further appellate review, the SJC affirmed, holding that the trustees had breached their fiduciary duty and expressly refusing to rule on the bad faith claim, "stating that a finding of negligent breach of fiduciary duty would be sufficient to affirm the judgment." One of the trustees, Baylis, then filed a bankruptcy petition, and the beneficiaries asserted that the debt was non-dischargeable. The beneficiaries claimed that the probate judge's findings on bad

faith should have preclusive effect, but the Court, applying Massachusetts law, rejected the argument:

> If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone, and neither receives preclusive effect. If, however, the appellate court affirms both grounds of the holding, each ground receives preclusive effect. On the other hand, if the appellate court affirms on one ground and passes on the other, the judgment is conclusive only as to the first determination.

*Baylis,* 217 F.3d at 71 (citations and internal quotation marks omitted).

As in this case, *Baylis* involved a claim that a Massachusetts decision should have preclusive effect in federal court, applying Massachusetts preclusion law. As in this case, the Massachusetts decision rested on separate and independent grounds, each of which was sufficient to support the judgment. And as in this case, the Massachusetts decision was appealed, and the appellate court affirmed on one of the two grounds, expressly refusing to rule on the other.

The only real differences are, first, that the Massachusetts decision in *Baylis* was judicial rather than administrative, and, second, that in *Baylis* there were *two* appellate decisions rather than one. The first difference is unimportant in this context—certainly an administrative decision cannot have *greater* preclusive effect than a judicial decision would have. The second difference is unimportant, too, because when the SJC takes a case on further appellate review, the Appeals Court decision never becomes binding. *See Baylis,* 217 F.3d at 71 n.3.

Canada suggested below that the Reviewing Board decision was itself an appellate decision and thus that the rule of *Baylis* does not apply. The simple answer to this is that the Reviewing Board's decision was the first decision to conclude that Canada was not required to obtain insurance for its workers. Merlini had a statutory right of appeal from that administrative decision to the Appeals Court, which she exercised, but the court declined to rule on the merits of the issue. No court has ever reviewed the Department of Industrial Accident's erroneous conclusion. So *Baylis* applies with full force.

Canada also pointed below to *Alicea v. Commonwealth,* 466 Mass. 228, 993 N.E.2d 725 (2013). In a dictum, the *Alicea* court suggested that "the majority of Federal courts" would give preclusive effect to two findings, even if the judgment following on those findings had been affirmed based on only one of them. *Alicea,* 466 Mass. at 238 n.15, 993 N.E.2d at 733. The *Alicea* dictum does not accurately reflect the state of federal preemption law. *See* 18 Charles A. Wright *et al., Federal Practice & Procedure* § 4421 n.34 (3d ed. 2016) ("The federal decisions agree with the Restatement view that once an appellate court has affirmed on one ground and passed over another, preclusion does not attach to the ground omitted from its decision"). But here *Massachusetts* preclusion law, not *federal* preclusion law, governs. *Baylis* was a federal decision applying Massachusetts preclusion law.

*Alicea* was a Massachusetts case applying federal preclusion law. *See Alicea,* 466 Mass. at 234-35, 993 N.E.2d at 731. So *Baylis,* not *Alicea,* governs.

Moreover, even if *Alicea* were applicable, it would not help Canada. In *Alicea,* the question was whether this Court's rejection of a claim that Alicea had made in the federal courts—that his sentence in a state criminal proceeding had been impermissibly high—should have preclusive effect. Alicea argued that this Court had decided the case on two independent grounds, each sufficient on its own to support the judgment. The SJC held that this Court's decision had preclusive effect because the two bases of for the First Circuit's decision were "inextricably intertwined," not independent of each other. *Alicea,* 466 Mass. at 238, 993 N.E.2d at 733.

In contrast, the Reviewing Board's conclusion that Merlini was not entitled to benefits from the Trust Fund because she was entitled to benefits under Canadian law is entirely unrelated to its conclusion that she was not entitled to benefits because Canada was not required to comply with the Massachusetts workers' compensation statute. An employee is entitled to workers' compensation under Massachusetts law even if he or she was also entitled to benefits under the law of another jurisdiction. *Lavoie's Case,* 334 Mass. 403, 408-11, 135 N.E.2d

750, 753-54 (1956).[5] And an employee is entitled to bring an action against an uninsured employer, as Merlini has done, even if he or she received benefits under the law of another jurisdiction. *See Barrett v. Transformer Serv., Inc.,* 374 Mass. 704, 710-13, 374 N.E.2d 1325, 1328-29 (1978). "The mere fact that the employer has complied with the requirements of the workers' compensation act of another state applicable to the injury is of no avail if the employer fails to insure in Massachusetts." Nason, *supra* § 5.9.

## CONCLUSION

Employing clerical workers is a commercial activity, and when a clerical worker is injured on the job in the course of her employment here in Massachusetts, her claim against her uninsured employer is based upon her employment and her injury, not on the reasons the employer has for being uninsured. For all the reasons given above, the order dismissing the case for lack of jurisdiction should be reversed and the case remanded for further proceedings.

---

[5] While entitlement to benefits in another jurisdiction is not a defense to a claim against the uninsured employer, it *is* a defense to a claim against the Trust Fund. *See* Mass. Gen. Laws ch. 152, § 65(2) (Trust Fund benefits payable only if "the claimant is not entitled to workers' compensation benefits in any other jurisdiction"). The employer is entitled to a credit for benefits paid under the foreign law. *See Lavoie's Case,* 334 Mass. at 410-11, 135 N.E.2d at 754.

Respectfully submitted,

/s/ Theodore J. Folkman
Theodore J. Folkman
MURPHY & KING, P.C.
One Beacon St.
Boston, Mass. 02108
(617) 423-0400
tfolkman@murphyking.com

*Counsel for Cynthia L. Merlini*

Dated:      January 22, 2018

CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7,691 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionately spaced typeface using Microsoft Word 2013 in 14 pt. Times New Roman.

/s/ Theodore J. Folkman
Theodore J. Folkman

CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2018, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

John F. Cooney, Esq., and Benjamin E. Horowitz, Esq., counsel of record for the appellee.

/s/ Theodore J. Folkman
Theodore J. Folkman

## ADDENDUM

A.    Memorandum and Order of December 7, 2017.......................................Add. 1

B.    Order of Dismissal of December 7, 2017..............................................Add. 11

C.    *Merlini v. Consulate General of Canada* (Mass. DIA Rev. Bd. 2015) ..................................................................................................Add. 12

D.    *Merlini's Case* (Mass. App. Ct. 2016) ................................Add. 24

E.    28 U.S.C. § 1605................................................................................Add. 29

F.    Mass. Gen. Laws ch. 152, § 25A.......................................................Add. 30

G.    Mass. Gen. Laws ch. 152, § 66.........................................................Add. 30

H.    Mass. Gen. Laws ch. 152, § 67.........................................................Add. 30

United States District Court
District of Massachusetts

```
_____
                                )
Cynthia L. Merlini              )
                                )
         Plaintiff,             )
                                )
      v.                        )
                                )    Civil Action No.
Canada                          )    17-10519-NMG
                                )
         Defendant.             )
                                )
                                )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

Cynthia Merlini ("Merlini" or "plaintiff") filed this action against the sovereign nation of Canada ("defendant") in March, 2017. She claims that during her employment by the Consulate General of Canada in Boston, an arm of the Government of Canada ("the Consulate"), she suffered an injury that left her disabled.

Pending before this Court is defendant's motion to dismiss for lack of jurisdiction. For the reasons that follow, defendant's motion to dismiss will be allowed.

I.  <u>Background</u>

    A.  **Alleged Injury**

Merlini states that she is a United States citizen living in Massachusetts and that she is not a Canadian citizen or national. She worked for defendant at the Consulate in a

-1-

clerical position from 2003 to 2009.  Her duties were
secretarial and included answering the telephone, maintaining
files and typing letters.

Merlini claims that on January 22, 2009, while preparing
coffee and tea for a meeting at the Consulate's office, she
tripped over an unsecured speakerphone cord and fell, striking a
credenza.  She alleges that as a result of that accident, she
suffered a serious bodily injury that rendered her unable to
work.  In this action, Merlini seeks damages for physical and
mental pain and suffering, medical expenses, past and future
lost wages, physical dysfunction and loss of earning capacity.

**B.   Procedural History**

Merlini maintains she received benefits from the Government
of Canada pursuant to Canadian law from March, 2009, until
October, 2009, at which point the Government of Canada stopped
paying her benefits.  She did not appeal the discontinuation of
benefits in Canada.

Merlini brought a claim against defendant in the
Massachusetts Department of Industrial Accidents ("DIA").  She
alleged that defendant neither purchased workers' compensation
insurance nor obtained a license as a self-insurer, in violation
of Massachusetts workers compensation law. M.G.L. c. 152.  An
administrative law judge ("ALJ") at DIA found Merlini was
entitled to permanent and total incapacity benefits and other

benefits from the Massachusetts Workers' Compensation Trust Fund.

The DIA reviewing board reversed the ALJ's decision, finding that 1) Canada was not within the Commonwealth's personal jurisdiction, 2) Canada was not improperly uninsured because it had immunity under the Foreign Sovereign Immunities Act ("FSIA") and 3) Merlini had no claim because she was entitled to benefits under Canadian law.  Merlini appealed the reviewing board's decision to the Massachusetts Appeals Court. In re Merlini, 154 N.E.3d 606 (Mass. App. Ct. 2016) (unpublished table opinion).  The Massachusetts Appeals Court held that the DIA reviewing board correctly reversed the ALJ, concluding the reviewing board properly found Canadian law applied and that Merlini's remedy, if any, was against the Canadian government. Id. at *2.  The Court did not address the issue of whether the Canadian government is subject to jurisdiction in the Commonwealth, id., and Merlini did not petition the Massachusetts Supreme Judicial Court for further appellate review.

On March 23, 2017, Merlini filed a complaint in this Court, alleging defendant violated M.G.L. c. 152, § 66.  She claims defendant is strictly liable for her injuries because defendant was unlawfully uninsured under the Massachusetts workers' compensation statute.

-3-

Defendant filed a motion to dismiss in June, 2017, contending that 1) this Court lacks subject-matter jurisdiction to hear Merlini's claim, 2) the DIA Reviewing Board's decision precludes Merlini from bringing this case and 3) Merlini has failed to state a claim upon which relief can be granted. Because this Court agrees with defendant that it lacks subject-matter jurisdiction to hear plaintiff's case, it will address only that issue.

## II. Defendant's Motions to Dismiss for Lack of Subject-Matter Jurisdiction

### A. The Foreign Sovereign Immunities Act

Pursuant to Fed. R. Civ. P. 12(h)(3), if this Court "determines at any time that it lacks subject-matter jurisdiction the court must dismiss the action."  A defendant may present a defense of lack of subject-matter jurisdiction by motion. Fed. R. Civ. P. 12(b).

Pursuant to FSIA, 28 U.S.C. § 1602 et seq.,

> [s]ubject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States[.]

28 U.S.C. § 1604.  In other words, a foreign sovereign defendant is "presumptively immune" from liability in the federal courts of the United States. Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993).

-4-

FSIA provides limited exceptions to a foreign sovereign's immunity, however, and these exceptions constitute "the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 443 (1989).  Relevant here are the commercial activity and tortious activity exceptions.

Under the commercial activity exception, a foreign state is not immune from jurisdiction of the United States courts when a foreign state's action is:

> [1)] based upon a commercial activity carried on in the United States; [2)] performed in the United States in connection with a commercial activity of the foreign state elsewhere [or 3)] outside the territory of the United States [and] in connection with a commercial activity . . . [that] causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

Under the tortious activity exception, a foreign state is not immune from jurisdiction of the United States courts when "money damages are sought against a foreign state for personal injury or death . . . occurring in the United States" that are caused by a tortious act or omission of that foreign state or its employee while acting withinin the scope of his/her employment. Id. § 1605(a)(5).  The tortious activity exception, however, does not apply to a claim

-5-

based upon the exercise or performance or the failure to
exercise or perform a discretionary function regardless
of whether the discretion be abused.

Id. § 1605(a)(5)(A).

### B.   The Commercial Activity Exception

Plaintiff avers that her claim falls within FSIA's
commercial activity exception to foreign sovereign immunity.
The parties do not dispute that defendant qualifies as a
"foreign state" for purposes of the Act under 28 U.S.C.
§ 1605(3)(a).  Plaintiff relies on the first clause of the
commercial activities exception, claiming that defendant is
liable for its commercial activities in Massachusetts.

An action is "based upon" commercial activity when
that conduct forms the "basis" or "foundation" for a claim,
and that "element[] of the claim, if proven, would entitle
a plaintiff to relief under his theory of the case."
Nelson, 507 U.S. at 357.  In assessing whether a certain
activity is commercial, "courts must look to the nature of
the activity rather than its purpose." Fagot Rodriguez v.
Republic of Costa Rica, 297 F.3d 1, 5-6 (2002) (internal
citations omitted).

The court must address whether the foreign state's
actions, regardless of the motive behind them, "are the
type of actions by which a private party engages in trade
and traffic or commerce." Republic of Arg. v. Weltover,

-6-

<u>Inc.</u>, 504 U.S. 607, 614 (1992) (internal citations omitted) (emphasis in original).  A sovereign state engages in commercial activity with respect to FSIA when "it exercises only those powers that can also be exercised by private citizens" rather than "powers peculiar to sovereigns". <u>Nelson</u>, 507 U.S. at 360 (internal quotation marks and citations omitted).

Plaintiff asserts that defendant violated M.G.L. c. 152, § 65(2)(e) by choosing not to purchase workers' compensation insurance and defendant is therefore strictly liable for her injuries. <u>Id.</u>  Plaintiff contends that her claim is "based upon" defendant's decision to provide its own system of benefits to its employees. <u>Nelson</u>, 507 U.S. at 357.  The determinative question is, therefore, whether defendant's decision not to purchase workers' compensation insurance is commercial in nature. <u>Weltover, Inc.</u>, 504 U.S. at 614.

Defendant's decision to provide its own benefits does not fall under the commercial activities exception because the decision to create and organize a workers' compensation program is sovereign in nature. <u>See</u> <u>Nelson</u>, 507 U.S. at 361 (concluding abuse of power by police is sovereign in nature and does not fall within exception); <u>cf.</u> <u>Weltover Inc.</u>, 504 U.S. at 614 (holding refinancing bonds is not sovereign in

-7-

nature and does fall within exception).  A sovereign

defendant's decision to offer and structure its own form of

benefits is not comparable to exercising a power that could

also be leveraged by private citizens.  Weltover Inc., 504

U.S. at 614.  Thus, the actions on which the claim is

founded are not commercial in nature and the commercial

activities exception to FSIA does not apply here.

§ 1605(a)(2); Fagot Rodriguez, 297 F.3d at 5-6.

     **C.   The Tortious Activity Exception**

     Plaintiff also avers that her claim falls within FSIA's

tortious activity exception to foreign sovereign immunity. 28

U.S.C. § 1605(a)(5).  She contends that defendant's failure to

acquire insurance pursuant to M.G.L. c. 152, § 66 comprises the

requisite tortious conduct.

     The tortious activity exception does not apply, however, to

claims that involve the exercise of discretion. See Fagot

Rodriguez, 297 F.3d at 8.  A challenged government action is

protected as discretionary if the conduct in question is a

matter of choice or involves an element of judgment and if that

judgment is of the kind that the discretionary function

exception was designed to shield. Fagot Rodriguez, 297 F.3d at

9.  The provision serves to prevent "judicial second guessing"

of public policy decisions. Id.

-8-

Defendant does not dispute that its decision to maintain its own system of workers' compensation insurance involves an element of choice. <u>Id.</u>  The issue is whether defendant's choice is a legislative or administrative decision grounded in social, economic or political policy. <u>Id.</u>  In other words, the essential question here is whether the challenged action is based on "some plausible policy justification". <u>Id.</u> at 11.

The decision to provide benefits to workers injured in their employment is inherently grounded in a social, economic and political policy and is based on a plausible policy justification. <u>Id.</u> at 9, 11.  Because plaintiff's claim is based on defendant's decision to provide its own system of benefits and to remain uninsured in Massachusetts, the claim applies to discretionary conduct. 23 U.S.C. § 1605(a)(5)(i).  Accordingly, the tortious activity exception to FSIA does not apply to plaintiff's claim. <u>Id.</u>

### D.  Conclusion

Because plaintiff has failed to demonstrate that one of the exceptions to FSIA applies here, defendant is presumptively immune from liability. 28 U.S.C. § 1604.  Accordingly, this Court lacks subject matter jurisdiction to hear plaintiff's case and declines to address the other arguments raised by defendant. <u>Id.</u>

**ORDER**

In accordance with the foregoing, defendant's motion to dismiss for lack of subject matter jurisdiction (Docket No. 12) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated: December 7, 2017

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
Cynthia L Merlini,                      )
                                        )
                                        )
                                        )
                Plaintiff,              )          Civil Action No.
                                        )          1:17-cv-10519-NMG
                                        )
v.                                      )
                                        )
Canada                                  )
                                        )
                                        )
                                        )
                Defendant.              )
_____ )

ORDER OF DISMISSAL

_____Gorton  D.J._____


        In accordance with the Court's Memorandum & Order dated

12/7/2017 granting the Defendant's motion to dismiss (dkt. no.

12), it is hereby ORDERED that the above-entitled action be and

hereby is DISMISSED.


_____12/7/2017_____                    By the Court,
        Date                            ___/s/Stephanie Caruso___
                                        Deputy Clerk

## COMMONWEALTH OF MASSACHUSETTS

DEPARTMENT OF
INDUSTRIAL ACCIDENTS

BOARD NO.  035748-09

Cynthia L. Merlini                          Employee
Consulate General of Canada                 Employer
Workers' Compensation Trust Fund            Insurer

### REVIEWING BOARD DECISION
(Judges Koziol, Fabricant and Horan)

The case was heard by Administrative Judge Preston.

### APPEARANCES
Alan S. Pierce, Esq., for the employee
Pedro Benitez-Perales, Esq., for the Workers' Compensation Trust Fund
William H. Murphy, Esq., for the amicus curiae[1] at hearing
Paul M. Moretti, Esq., for the amicus curiae on appeal

**KOZIOL, J.**  The employee, Cynthia Merlini, is a United States citizen
and Massachusetts resident who sustained an industrial injury while working as an
administrative assistant in the Boston office of the Consulate General of Canada.
The Workers' Compensation Trust Fund (WCTF) appeals from the judge's
decision on recommittal, ordering it to pay the employee § 34 temporary total
incapacity benefits, followed by § 34A permanent and total incapacity benefits
from January 23, 2012, and continuing.  (Dec. II, 20.) [2]  In his first decision, the
judge ordered the WCTF to pay the employee weekly incapacity and medical
benefits under the Act.  However, in doing so, he failed to make findings

---

[1] Government of Canada.

[2] We refer to the judge's June 28, 2011 decision as Dec. I, and his September 17, 2013
decision as Dec. II.  On recommittal, testimony was taken over the course of three days,
December 11, 2012, January 18, 2013, and February 20, 2013.  Hereinafter, we refer to
the transcripts of those proceedings as Tr. I, Tr. II, and Tr. III, respectively.  We also take
judicial notice of the documents in the board file.  Rizzo v. M.B.T.A., 16 Mass. Workers'
Comp. Rep. 160, 161 n. 3 (2002).

addressing the statutory requirements of § 65(2)(e).[3]  Merlini v. Consulate

General of Canada, 26 Mass. Workers' Comp. Rep. 195, 203 (2012), (Merlini I).

Pursuant to that statutory authority, the WCTF is obligated to pay an injured

worker the benefits set forth in chapter 152 only where the employer is subject to

the personal jurisdiction of the commonwealth *and* is uninsured in violation of this

chapter.  In addition, the claimant must not be entitled to benefits in any other

jurisdiction.  We vacated the judge's decision and recommitted the case with

directives to 1) adequately address the requirements of § 65(2)(e); 2) allow the

Trust Fund the opportunity to present rebuttal testimony regarding the employee's

rights under Canadian law; and 3) take judicial notice of such law, in order to

sufficiently develop the record for appellate review.

On recommittal, the judge addressed those issues and ordered the WCTF to

pay workers' compensation benefits to the employee.  (Dec. II, 20.)  The WCTF

argues the judge erred in awarding benefits to the employee because, pursuant to

§ 65(2)(e) and 452 Code of Mass. Regs. § 3.04(8),[4] it is not legally responsible to

pay the employee any benefits under the Act.  For the reasons that follow, we

reverse the decision.

---

[3]  General Laws, c. 152, § 65, provides, in pertinent part:

> (2)  There is hereby established a trust fund in the state treasury, known as the
> Workers' Compensation Trust Fund, the proceeds of which shall be used to
> pay or reimburse . . . (e) payment of benefits resulting from approved claims
> against employers subject to the personal jurisdiction of the commonwealth
> who are uninsured in violation of this chapter; provided, however, that (i) the
> claimant is not entitled to workers' compensation benefits in any other
> jurisdiction. . . .

[4] 452 Code of Mass. Regs. § 3.04(8) provides:

> For the purposes of M.G.L. c. 152, § 65(2)(e),  no public employer shall be
> considered to be uninsured.

## I. **Personal Jurisdiction**

Pursuant to § 65(2)(e), the employer must be subject to the personal jurisdiction of the Commonwealth as a condition precedent to the issuance of an award of workers' compensation benefits against the WCTF. On recommittal, Canada resisted being joined as a party to the claim, asserting there was no jurisdiction to do so. (Dec. II, 4, 6; Government of Canada Amicus br. 1-28.) Ultimately, the judge allowed the Canadian government to participate on a limited basis without waiving the jurisdictional issue. The judge explained:

> I find that I do not have jurisdiction to order a sovereign foreign government pursuant to Chapter 152 to do anything regarding Ms. Merlini's claim. My authority is bound by Chapter 152. If the Canadian government had refused to assist the parties beyond voluntarily furnishing opinion testimony/documents/witnesses, I could not order enforcement.

(Dec. II, 7.)[5] The WCTF argues that if the judge did not have jurisdiction to join the government of Canada, then he had no jurisdiction to hear the claim against the WCTF, or to order it to pay benefits under § 65(2)(e). (WCTF br. 5.) We agree. The judge's inquiry should have ended with that initial finding and the case should have been dismissed. However, the judge further found:

> That with respect to jurisdiction over the Canadian government the WCTF pursuant to the Foreign Sovereign Immunity [sic] Act (FSIA) 28 USC, Sec. 1605(a)(2) can pursue personal jurisdiction over the sovereign government of Canada based on the exclusion of such protection in the commercial [activity] exemption.
> . . .
>
> I find that given the business setting employment status of Ms. Merlini and being an LES [locally engaged staff] employee, a Massachusetts resident and U.S. citizen, that when she had her industrial accident personal jurisdiction for the WCTF affixed over the Canadian government pursuant to the FSIA.

---

[5] The government of Canada was permitted to present evidence regarding its applicable laws. (Dec. II, 6-7.)

(Dec. II, 13, 15.) The judge's internally inconsistent findings regarding the issue of jurisdiction, "go to the heart of the issue presented[,] are arbitrary, and cannot stand." Cruz v. Corporate Design Co., 9 Mass. Workers' Comp. Rep. 618, 621 (1995).

To the extent the judge's decision may be read as concluding that the Canadian government was indeed subject to the personal jurisdiction of the Commonwealth in this case, it must be reversed. The judge lacks authority to make such a determination because the FSIA vests that authority in the federal courts. 28 U.S.C. § 1330; 28 U.S.C. § 1441.[6] "In enacting the FSIA, Congress, upon the recommendation of the executive branch, transferred an important aspect of our foreign policy to the judiciary." Rex v. Cia.Pervana deVapores, S.A., 660 F.2d 61, 68-69 (3rd Cir. 1981). Administrative judges at the Department of Industrial Accidents are members of the executive branch of government functioning within an agency of the Commonwealth of Massachusetts; they are not members of the state or federal judiciary, and thus have no authority to enter

---

[6] As stated in the report of the House of Representatives on the Foreign Sovereign Immunities Act of 1976:

> Section 2 of the bill adds a new section 1330 to title 28 of the United States Code, and provides for subject matter and personal jurisdiction of U.S. district courts over foreign states and their political subdivisions, agencies, and instrumentalities. Section 1330 provides a comprehensive jurisdictional scheme in cases involving foreign states. Such broad jurisdiction in the Federal courts should be conducive to uniformity in decision, which is desirable since a disparate treatment of cases involving foreign governments may have adverse foreign relations consequences. Plaintiffs, however, will have an election whether to proceed in Federal court or in a court of a State, subject to the removal provisions of section 6 of the bill.
>
> (a) *Subject Matter Jurisdiction.* – Section 1330(a) gives Federal district courts original jurisdiction in personam against foreign states (defined as including political subdivisions, agencies, and instrumentalities of foreign states). The jurisdiction extends to any claim with respect to which the foreign state is not entitled to immunity under sections 1605-1607 proposed in the bill, or under any applicable international agreement of the type contemplated by the proposed section 1604.

H. Rep. No. 94-1487, 94th Cong., 2d Sess. at 12-13, reprinted at 1976 U.S. Code Cong. & Ad. News 6604, 6615.

orders under the FSIA. See generally, <u>Ellis</u> v. <u>Department of Indus. Accs.</u>, 463 Mass. 541, 546-549 (2012). Moreover, to the extent the judge's conflicting findings show he acknowledged that he lacked the authority to conclusively determine whether personal jurisdiction existed, his decision establishes only the possibility that jurisdiction exists through operation of the commercial activity exception of the FSIA, and cannot stand. Because personal jurisdiction must be present before any order can issue against the WCTF, the mere possibility that jurisdiction exists is, as a matter of law, insufficient to support an award of benefits against the WCTF. Thus, reversal is the appropriate disposition.

Our discussion could end here. However, because we find merit to the WCTF's claims that the judge erred in concluding the remaining statutory criterion under § 65(2)(e) were met, we address those claims of error.

## II. Canada is not uninsured in violation of Chapter 152

Canada did not carry a Massachusetts workers' compensation insurance policy. The WCTF argues that because the Consulate General of Canada is a public employer, it is entitled to the same exemption to § 25A's requirement of procuring such coverage[7] as other exempt employers listed in § 25B, such as the Commonwealth and its various counties, cities, towns, districts and public authorities.[8] Thus, the WCTF argues, if the Commonwealth of Massachusetts

---

[7] General Laws. c. 152, § 25A, provides, in pertinent part:

In order to promote the health, safety and welfare of employees, every employer shall provide for the payment to his employees of the compensation provided for by this chapter in the following manner:

. . .

(2) Subject to the rules of the department, by obtaining from the department annually a license as a self-insurer…

[8] General Laws, c. 152, § 25B, states in pertinent part:

Section twenty-five A shall not apply to the commonwealth, the Massachusetts Turnpike Authority, the Massachusetts Bay Transportation Authority, the Massachusetts Port Authority or the various counties, cities, towns and districts provided for in sections sixty-nine to seventy-five, inclusive.

does not need a self-insurance license because it is a public employer, Canada is not required to have one either. (WCTF br. 7-8.) Moreover, the WCTF argues that 452 Code of Mass. Regs. § 3.04(8) states "[f]or the purposes of G. L. c. 152, § 65(2)(e), no public employer shall be considered to be uninsured."

Relying on the testimony of Canadian attorney Sean Bawden, the judge found Canada is not a public employer and is thus required to carry workers' compensation coverage. (Dec. 12, 15.) We agree that this finding is contrary to law, but not precisely for the reason proffered by the WCTF.

The regulation's mandate that "no public employer shall be considered to be uninsured" finds its root in the provisions of § 69, which allows injured workers employed by public employers to receive payment of "the compensation provided by this chapter" so long as "[t]he commonwealth and any county, city, town or district having the power of taxation . . . has accepted chapter eight hundred and seven of the acts of nineteen hundred and thirteen . . . ."[9] As discussed by the Massachusetts Appeals Court, §§ 69-75:

> 'sets apart for separate consideration the employees of the Commonwealth and of its subdivisions as distinguished from employees in private industry.' The rationale for treating 'public' and 'private' sector employees differently is derived, in large part, from longstanding principles of governmental immunity from tort liability, in the absence of a statutory exception. Section 69 of the Act departs from traditional immunity doctrine by extending the principle of compensation to cities within the Commonwealth, but only to such cities as have 'accepted' the Act. By voluntarily 'accepting' the Act, a city (or town) effectively waives its common law immunity and thereby covenants to compensate its 'laborers, workmen, mechanics, and nurses' for job related injuries. . . . Since the obligation to provide insurance under § 25A is elective with regard to public employers, a city, if it has elected to provide coverage at all, is only obliged to insure against such liability 'to the extent of its acceptance' of the Act.

---

[9] St. 1913, c. 807, §§ 1-7, entitled "An Act to Provide for Compensating Certain Public Employees for Injuries Sustained in the Course of Their Employment" brought "laborers, workmen and mechanics" employed by the Commonwealth, and any other political units that voted to accept the Act, within the coverage of the Chapter 152. "Nurses" were added to "laborers, workmen and mechanics" by St. 1971, c. 1059. G. L. c. 152, § 69.

<u>Coppola</u> v. <u>Beverly</u>, 31 Mass. App. Ct. 209, 212 (1991)(internal citations omitted).

Thus, the regulation and §§ 69-75, do not exempt those public employers from

coverage but include them within the Act's coverage, at the election of the entities

listed therein. Indeed, without the provisions of § 69, individuals employed by the

Commonwealth and its cities and towns, would not have a remedy at the

Department of Industrial Accidents. See <u>Woodbridge</u> v. <u>Worcester State Hosp.</u>,

348 Mass. 38, 42 (1981)("The rules of construction governing statutory waivers of

sovereign immunity are stringent. . . . Consent to suit must be expressed by the

terms of a statute, or appear by necessary implication from them."); <u>Coppola</u>,

<u>supra</u> (teachers not within coverage of city's workers' compensation self-

insurance and city not strictly liable for electing not to include them). As a foreign

government, Canada simply is not one of the public employers described in

§§ 25A, 25B, 65 and 69-75, and is not subject to those statutory provisions.

However, the broader concept which provided the foundation for the enactment of

those statutory provisions, and which dictates the result here, is the doctrine of

sovereign immunity.

There is no dispute that the Consulate General of Canada is an arm of the

Canadian government entitled to claim immunity under the FSIA. See <u>Joseph</u> v.

<u>Office of the Consulate General of Nigeria</u>, 830 F.2d 1018, 1021 (9th Cir.

1987)("The Consulate, as a separate legal person, also qualifies as a 'foreign state'

under the FSIA"). "The FSIA is the exclusive source of subject matter jurisdiction

over suits involving foreign states or their instrumentalities." <u>Id</u>. Once immunity

has been asserted by a foreign sovereign government, our department lacks

jurisdiction to determine whether an exception to that immunity applies. (See

discussion, <u>supra</u>, "I. Personal Jurisdiction.") Thus, by virtue of Canada's claim of

sovereign immunity, asserted in the proceedings below, our department lacks
subject matter jurisdiction over the employee's claim against Canada.[10]

Section 65(e)(2)'s threshold requirement that the employer must be
uninsured "in violation of this chapter," addresses the issue of subject matter
jurisdiction.   If a specific employer is not required to provide for workers'
compensation insurance under chapter 152, the employer cannot be considered to
be uninsured "in violation of this chapter" when it fails to carry such a policy, and
the WCTF cannot be held responsible for the payment of such benefits.  See
Tibbetts v. Leech Lake Reservation Business Comm., 397 N.W.2d 883, 190
(Minn. 1986)(after observing that state's Special Compensation Fund's liability is
derivative from that of the employer, a sovereign Native American Tribe, the court
noted "[t]he [the state workers' compensation] Act was not designed to afford
employees scheduled benefits where injured in noncovered employment").
Accordingly, on this ground alone, the WCTF cannot be responsible for payment
of workers' compensation benefits in this case.

---

[10] Although they are not foreign sovereign governments under the FSIA, by analogy, we
find the following cases concerning the sovereign immunity of Native American Tribes
to be instructive.  See generally, Wampanoag Tribe of Gay Head (Aquinnah) v.
Massachusetts Commn. Against Discrimination, 63 F.Supp.2d 119, 123-125 (D. Mass.
1999)("tribes of Native Americans enjoy a sovereign's common-law immunity from suit"
and waiver must be "unequivocally expressed," so without such waiver MCAD was
enjoined from "prosecuting, hearing or deciding any claim of employment discrimination
brought . . . against the Tribe and from otherwise exercising jurisdiction over the Tribe");
White Mountain Apache Tribe v. Industrial Commn. of Arizona, 144 Ariz. 129, 696 P.2d
223 (1985)(even though states' workers' compensation laws applied to federal enclaves,
and congress authorized Native American Tribe's purchase of insurance, absent
unequivocal waiver of Tribe's sovereign immunity, state commission lacked jurisdiction
over workers' compensation claim); Middletown Rancheria of Pomo Indians v. Workers'
Compensation Appeals Bd., 60 Cal.App.4th 1340, 1348, 71 Cal. Rptr.2d 105, 111
(1998)(workers' compensation board lacked subject matter jurisdiction over claim
against Native American Tribe filed by injured casino worker, who was not a member of
the Tribe, even though injury occurred on land where federal statute permitted
application and enforcement of state workers' compensation laws.  "Tribe's sovereign
status is an independent barrier for holding California's workers' compensation laws
inapplicable because their enforcement infringes on the right of Tribe to govern its own
employment affairs.").

## III.  **Entitlement to benefits in another jurisdiction**

Finally, in order to receive benefits from the WCTF, pursuant to § 65(2)(e)(i), the employee cannot be "entitled to benefits in any other jurisdiction."  The WCTF asserts the employee's claim fails to satisfy this requirement because she was paid workers' compensation benefits pursuant to Canada's Government Employees Compensation Act (GECA).  (WCTF br. 11.)

There is no dispute the employee received weekly incapacity and medical benefits from the Canadian government after she was injured.[11]  The employee argues, however, that receipt of benefits alone does not end the inquiry, because benefits differ between locally engaged staff (LES), such as herself, and Canadian based staff (CBS).  She further asserts that LES employees do not have the right to appeal from Canada's unilateral decision to discontinue benefits.  (Employee br. 9.)  Based on the testimony of Canadian attorney Sean Bawden,[12] and GECA § 7(2), the judge found that the employee was not "entitled to benefits in another jurisdiction," therefore satisfying the requirements of § 65(2)(e)(i).  (Dec. II, 15.)  The judge found that because the employee's entitlement to benefits was discretionary in nature and because, as an LES employee, she never had a valid

---

[11]  The employee testified she was paid workers' compensation benefits, which were paid at the rate of her full salary, pursuant to GECA, from March 13, 2009, through approximately October 28, 2009.  (Tr. III, 22, 25, 26.)

[12]  The judge made extensive findings adopting Mr. Bawden's opinions that the employee was not "entitled" to workers' compensation benefits under Canadian law because the payment of those benefits is discretionary for LES staff; the employee had no entitlement to an evidentiary hearing after her benefits were denied; because the employee performed clerical work, she should be considered as working for a private employer; the employee had no rights to challenge the merits of the Canadian government's refusal to re-open her case; and, her appellate rights in Canada do not satisfy the requirements of due process of law under the fourteenth Amendment to the United States Constitution.  (Dec. II, 12-15.)

due process right of appeal,[13] she was never "entitled" to benefits, within the meaning of § 65(2)(e)(i), in the jurisdiction of Canada. (Dec. II, 11-14, 17.)

As a threshold matter, we note that no claim was ever advanced that the employer bore no legal responsibility for the employee's work-related injuries. With that in mind, we observe that § 7 of GECA, by its own unambiguous language, addresses only *how* compensation for LES workers is paid,[14] not whether there is an entitlement to benefits. Moreover, contrary to the judge's findings, the employee *was* provided the right to appeal the decision to terminate her compensation. (Ex. 2A & 2B.) The employee testified that she had been advised of this right. (Tr. III, 66-68.) The employee also admitted that after the denial of her request for reconsideration and reinstatement of benefits, she did not file an appeal. (Tr. III, 86.) The employee cannot assert a due process violation because of her failure to file a timely appeal.

The fact that a compensation system for injured foreign employees was in place and the employee actually received benefits under that system necessarily ended the inquiry as to whether the employee was entitled to benefits. Chico v. Merrimack Employment Servs., 24 Mass. Workers' Comp. Rep. 267 (2010),[15]

---

[13] We note that a federal civilian employee covered by our own government's Federal Civilian Employees' Compensation Act, (FECA), 5 U.S.C. §§ 8108 et seq., faces a similar predicament:

> The most fundamental difference [between FECA and a typical state act] stems from the concept that federal benefits are granted as an act of grace, and that therefore Congress can attach any conditions it pleases. Thus, there is no right of judicial review of FECA decisions – a condition that would be unconstitutional under a state act.

3 Larson, Larson's Workers' Compensation Law, § 78.02 (rev. ed. 2014).

[14] Payment may be made either through a fund from which compensation payments are deposited, or directly by the Government of Canada. (Ex. 1.)

[15] Chico concerned a private employer located in New Hampshire. The existence of personal jurisdiction over the employer was established and there was no dispute that the employer was uninsured in violation of Chapter 152. Chico, supra, at 269.

10

aff'd, <u>Chico's Case</u>, 80 Mass. App. Ct. 1110 (2011)(Memorandum and Order

Pursuant to Rule 1:28)(WCTF only obligated to pay compensation to injured

employee of uninsured employers where injured employee is not entitled to

workers' compensation benefits in any other jurisdiction).  Although it lacks

precedential value,[16] we find the Appeals Court panel's endorsement of our

interpretation of § 65(2)(e)(i), based on the "plain and unambiguous" language of

the statute, to be instructive:

> As stated by the board in its decision, <u>CNA Ins. Cos.</u> v. <u>Sliski</u>,
> 433 Mass. 491, 498-499 (2001), is controlling on the issue of
> legislative intent. The court in <u>Sliski</u> interpreted the amendments
> to § 65 as an attempt to "narrow the Trust Fund's obligation to
> pay benefits to employees of uninsured employers." Id. at 499 n.
> 8 (citations omitted). The employee's contention that the statute
> permits him to make a claim against the trust fund because he is
> no longer entitled to continued benefits in New Hampshire,
> notwithstanding that he already collected workers' compensation
> benefits there, depends upon an overly restrictive view of the
> statute, and one that ignores the guidance of the Supreme Judicial
> Court.

<u>Chico</u>, <u>supra</u>.

Therefore, consistent with the reasons recited above, the decision awarding

the payment of benefits pursuant to § 65(2)(e) is reversed.

So ordered.

_____
Catherine Watson Koziol
Administrative Law Judge

_____
Bernard W. Fabricant
Administrative Law Judge

---

[16] As of February 25, 2008, summary decisions of the Appeals Court issued pursuant to rule 1:28, may be cited for their persuasive value but not as binding precedent. <u>Chace</u> v. <u>Curran</u>, 71 Mass. App. Ct. 258, 261 n.4 (2008).

**HORAN, J**., (concurring).  The majority concludes:

The fact that a compensation system for injured foreign employees was in place and the employee actually received benefits under that system necessarily ended the inquiry as to whether the employee was entitled to benefits [under our workers' compensation act].

I agree.  At the first hearing, the employee stipulated she had received, under Canadian law, workers' compensation benefits for her injury.  (Dec. I, 4-5; April 15, 2011 Tr. 6, 21-22.)  Relying on that stipulation, and our holding in Chico v. Merrimack Employment Servs., 24 Mass. Workers' Comp. Rep. 267 (2010), the WCTF moved to dismiss her claim.  (See March 16, 2011 Motion to Dismiss.) Based on our decision in Chico, the judge should have allowed the motion and denied and dismissed the claim.  In Merlini I, we should have followed our own precedent in Chico, which by then had been affirmed by the Appeals Court, and reversed the first hearing decision. [17]

Because the employee received workers' compensation benefits under Canadian law, her claim against the WCTF was invalid *ab initio*.  G. L. c. 152, § 65(2)(e)(i).

_____
Mark D. Horan
Administrative Law Judge

Filed:  **April 9, 2015**

_____

[17]  Our decision in Chico, supra, was affirmed by the Appeals Court in 2011.  Chico's Case, supra.  Our decision in Merlini I was filed on August 7, 2012.

NOTICE:  Summary decisions issued by the Appeals Court pursuant to its rule 1:28, as amended by 73 Mass. App. Ct. 1001 (2009), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See <u>Chace</u> v. <u>Curran</u>, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

15-P-847

CYNTHIA L. MERLINI'S CASE.

<u>MEMORANDUM AND ORDER PURSUANT TO RULE 1:28</u>

The employee, Cynthia Merlini, appeals from a decision of the reviewing board of the Department of Industrial Accidents (board) reversing an administrative judge's decision ordering the Massachusetts Workers' Compensation Trust Fund (trust fund) to pay her workers' compensation benefits.  We affirm.

<u>Background</u>.  The employee, a United States citizen and Massachusetts resident, was a locally-engaged staff member for the Consulate General of Canada (Consulate) in Boston.  In January, 2009, she was injured while working at the Consulate and filed a claim for workers' compensation in Canada.  The Canadian government paid the employee workers' compensation benefits from March, 2009, until October, 2009, when it discontinued the benefits and ordered her to return to work. The employee did not elect to appeal the discontinuation of her benefits in Canada; instead she filed the present claim against the trust fund in Massachusetts asserting her entitlement to

workers' compensation payments from the trust fund pursuant to
G. L. c. 152, § 65(2)(e).

Discussion.  The employee argues that Canada paid her
workers' compensation by mistake and that the board
misinterpreted the Canadian Government Employees Compensation
Act (GECA) to disqualify the claim she submitted to the trust
fund.  Accordingly, she argues that the trust fund is required
to pay her benefits pursuant to G. L. c. 152, § 65(2)(e)(i).
This interpretation of GECA depends upon an overly restrictive
view of the statute.  Moreover, this interpretation of
§ 65(2)(e)(i) is inconsistent with the guidance of the Supreme
Judicial Court and the plain language of the statute.  See CNA
Ins. Cos. v. Sliski, 433 Mass. 491, 498 n.8 (2001).[1]

The trust fund was established pursuant to G. L. c. 152,
§ 65, as amended by St. 1991, c. 398, § 85.  Section 65(2)(e)(i)
provides that a person seeking workers' compensation benefits
from the trust fund is entitled to such benefits only if "the
claimant is not entitled to workers' compensation benefits in
any other jurisdiction" (emphasis supplied).

The question at the heart of this appeal is whether the
employee is entitled to benefits under Canadian law.  GECA
defines an "employee" subject to the statute as "any person in

---

[1] In Sliski, the court interpreted the 1991 amendments to § 65 as
an attempt to "narrow[] the Trust Fund's obligation to pay
benefits to employees of uninsured employers."

the service of Her Majesty who is paid a direct wage or salary

by or on behalf of Her Majesty."  GECA § 2.  The parties do not

dispute that Merlini is an employee under GECA.  Rather, the

employee contends that payment of workers' compensation to her

was discretionary under Canadian law.  This misreads GECA's

statutory scheme.

GECA applies "in respect of an accident occurring . . .

within or outside Canada."  GECA § 3(2).  Section 4 then states:

"Subject to this Act, compensation <u>shall</u> be paid to (a) an

employee who (i) is caused personal injury by an accident

arising out of and in the course of his employment."  GECA

§ 4(1)(<u>a</u>)(i) (emphasis supplied).  Section 7 of GECA addresses

locally-engaged staff such as the employee.  This section

permits the Canadian government two options regarding the manner

in which compensation required by § 4 is to be paid to locally-

engaged staff.  See GECA § 7.[2]  In jurisdictions that do not

require that payments be made to a specific fund, such as

Massachusetts, § 7(2) provides that "[t]he [m]inister may, with

the approval of the [t]reasury [b]oard, award compensation in

_____

[2] Specifically, in foreign jurisdictions where "payments are made
to a fund out of which compensation is paid to [injured
employees and their dependents] there may, with the approval of
the [t]reasury [b]oard, be paid to that fund, [out of the
Canadian revenue fund], such payments [for the injured] employee
as may be deemed necessary."  GECA § 7(1).  This fund would then
disperse the benefits to the injured employee, rather than, as
was the case here, the Canadian government paying the injured
employee directly.

such amount and in such manner as he deems fit to (a) an employee locally engaged outside Canada who (i) is caused personal injury by an accident arising out of and in the course of [her] employment," i.e., make payments directly to the injured employee. GECA § 7(2)(a)(i).

Here, the board properly found that the Canadian government does not have discretion whether to pay workers' compensation benefits as the employee claims, because § 7 of GECA addresses only the manner in which compensation is paid, not whether an employee is entitled to such benefits.

A plain reading of GECA demonstrates that the employee was entitled to workers' compensation under § 4(1) because she was "an employee who [was] caused personal injury by an accident arising out of and in the course of [her] employment at the Consulate." GECA § 4(1)(a)(i). Section 7(1) does not apply to the employee in this case because Canada is not required by Massachusetts, or any other State in the United States, to pay into a workers' compensation trust fund. Section 7(2) provides, however, that workers' compensation may be paid directly by the Consulate or the agency overseeing the Consulate, the Department of Foreign Affairs and International Trade. GECA § 7(2). Indeed, the employee received workers' compensation benefits from Canada for six months.

Because of our disposition, we need not address whether the Canadian government is subject to the jurisdiction of the Commonwealth or whether the Consulate was an "uninsured employer" in violation of G. L. c. 152.

Decision of reviewing board
affirmed.

By the Court (Grainger,
Sullivan & Henry, JJ.[3]),

*Joseph F. Stanton*
Clerk

Entered: June 29, 2016.

---

[3] The panelists are listed in order of seniority.

**28 U.S.C. § 1605. General exceptions to the jurisdictional immunity of a foreign state**

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

    * * *

    (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

    * * *

    (5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to—

        (A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused,

    * * *

**Massachusetts General Laws ch. 152, § 25A. Purchase of insurance; self-insurance; reinsurance; deductibles**

In order to promote the health, safety and welfare of employees, every employer shall provide for the payment to his employees of the compensation provided for by this chapter in the following manner:

(1) By insurance with an insurer or by membership in a workers' compensation self-insurance group, established pursuant to the provisions of sections twenty-five E to twenty-five U, inclusive, or

(2) Subject to the rules of the department, by obtaining from the department annually a license as a self-insurer …

**Massachusetts General Laws ch. 152, § 66. Actions for injuries sustained by employees; limitations; defenses**

Actions brought against employers to recover damages for personal injuries or consequential damages sustained within or without the commonwealth by an employee in the course of his employment or for death resulting from personal injury so sustained shall be commenced within twenty years from the date the employee first became aware of the causal relationship between the disability and his employment. In such actions brought by said employees or by the Workers' Compensation Trust Fund pursuant to the provisions of subsection (8) of section sixty-five, it shall not be a defense:

1. That the employee was negligent;

2. That the injury was caused by the negligence of a fellow employee;

3. That the employee had assumed voluntarily or contractually the risk of the injury;

4. That the employee's injury did not result from negligence or other fault of the employer, if such injury arose out of and in the course of employment.

**Massachusetts General Laws ch. 152, § 67. Application to insureds and employers having right of election, of statutes relating to defenses to actions**

Section sixty-six shall not apply to actions to recover damages for personal injuries received by employees of an insured person or a self-insurer.

* * *