# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

CYNTHIA L. MERLINI,

Plaintiff-Appellant,

vs.

CANADA,

Defendant-Appellee

On Appeal from an Order of Dismissal of the
United States District Court for the District of Massachusetts

## REPLY BRIEF OF THE APPELLANT, CYNTHIA L. MERLINI

Theodore J. Folkman (No. 81828)
MURPHY & KING, P.C.
One Beacon Street
Boston, Mass. 02108
(617) 423-0400
tfolkman@murphyking.com

*Counsel for the Appellant*

# TABLE OF CONTENTS

Table of Authorities ................................................................................ ii

Argument.............................................................................................1

  A.  The Action Is Based On Merlini's Employment............................................1

    1.    Something Incidental To A Claim Cannot Be The Gravamen Of The Claim. ..................................................................................................1

    2.    Merlini's Employment, Unlike The Reasons For Canada's Failure To Purchase Insurance, Is Critical To The Case. .....................................................3

    3.    The Failure To Obtain A License To Self-Insure Is Not The Gravamen Of The Case, And Canada Could Never Have Obtained A License From Massachusetts To Administer Its Own Statutory Scheme. .................................4

  B.  Merlini's Employment Was A Commercial Activity......................................5

  C.  In Any Event, The Failure To Obtain Insurance Was a Commercial Activity. .............................................................................................6

    1.    The Details Of Canadian Law Would Be Irrelevant Even If Canada Were Right About The Gravamen Of The Case...................................6

    2.    Canada's Position Would Allow Foreign Sovereigns To Avoid Jurisdiction In Ordinary Commercial Cases. ....................................................11

  D.  The Non-Commercial Tort Exception Applies If the Commercial Activity Exception Does Not. ..............................................................................12

  E.  Canada Is Not Treating Merlini As The United States Treats Its Locally Engaged Staff At Its Embassies And Consulates.................................................14

  F.  The Length and Complexity Of The Proceedings Is Due Only To The Erroneous Claim of Foreign Sovereign Immunity From Suit.............................16

Conclusion ........................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek (Persero)*,
  600 F.3d 171 (2d Cir. 2010)................................................................10

*Animal Sci. Prods. v. Hebei Welcome Pharm. Co. (In re Vitamin C Antitrust
  Litig.),* 837 F.3d 175 (2d Cir. 2016), *cert. granted,* 138 S. Ct. 734 (2018)...........7

*Barrett v. Transformer Serv., Inc.,* 374 Mass. 704, 374 N.E.2d 1325 (1978)...........7

*Chettri v. Nepal Rastra Bank,* 834 F.3d 50 (2d Cir. 2016)....................................11

*El-Hadad v. United Arab Emirates,* 496 F.3d 658 (D.C. Cir. 2007).........................6

*Holden v. Canadian Consulate,* 92 F.3d 918 (9th Cir. 1996)............................5, 11

*Janini v. Kuwait University,* 43 F.3d 1534 (D.C. Cir. 1995)................................11

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,* 115 F.3d 1020
  (D.C. Cir. 1997) ............................................................................10

*Lavoie's Case,* 334 Mass. 403, 135 N.E.2d 750 (1956) ............................................7

*OBB Personverkehr AG v. Sachs,* 136 S. Ct. 390 (2015)..........................................1

*Rodriguez v. Republic of Costa Rica,* 297 F.3d 1 (1st Cir. 2002) ..........................13

*S.K. Innovation, Inc. v. Finpol,* 854 F. Supp. 2d 99 (D.D.C. 2012) ......................11

*Segni v. Commercial Office of Spain,* 835 F.2d 160 (7th Cir. 1987).......................6

*Shih v. Taipei Econ. & Cultural Rep. Office,* 693 F. Supp. 2d 805
  (N.D. Ill. 2010)............................................................................10

*Thorson v. Mandell,* 402 Mass. 744, 525 N.E.2d 375 (1988) ................................3

*United States v. Zannino,* 895 F.2d 1 (1st Cir. 1990) ................................................9

*Verlinden B.V. v. Cent. Bank of Nigeria,* 461 U.S. 480 (1983)..............................14

## Statutes

28 U.S.C. § 1603(d) ..............................................................................8, 9

28 U.S.C. § 1605(a)(5) ............................................................. 12, 13

28 U.S.C. § 1605(a)(5)(A) ...........................................................13

28 U.S.C. § 2680(a) .....................................................................13

Federal Employees' Compensation Act, 5 U.S.C. §§ 8101 *et seq.* .................. 14, 15

Government Employees' Compensation Act, R.S.C. 1985, c. G-5 ..........................2

Government Employees' Compensation Act, R.S.C. 1985, c. G-5, § 4(2) ..............4

Government Employees' Compensation Act, R.S.C. 1985, c. G-5, § 6 ...............4, 7

Government Employees' Compensation Act, R.S.C. 1985, c. G-5, § 7(2) ..........2, 4

Mass. Gen. Laws ch. 152, § 1(7) .....................................................5

Mass. Gen. Laws ch. 152, § 6A .......................................................7

Mass. Gen. Laws ch. 152, § 10 .......................................................5

Mass. Gen. Laws ch. 152, § 12(2) ....................................................7

Mass. Gen. Laws ch. 152, § 25A ......................................................4

Mass. Gen. Laws ch. 152, § 25A(1) ...................................................4

Mass. Gen. Laws ch. 152, § 25A(2) ...................................................4

Mass. Gen. Laws ch. 152, § 25A(3) ...................................................5

Mass. Gen. Laws ch. 152, § 34A ......................................................4

Mass. Gen. Laws ch. 152, § 66 .................................................. 1, 2, 3

Ontario Workplace Safety and Insurance Act, S.O. 1997, c. 16 ...............6

Ontario Workplace Safety and Insurance Act, S.O. 1997, c. 16, § 123(4)...............7

Ontario Workplace Safety and Insurance Act, S.O. 1997, c. 16, § 123(5)...............7

## Regulations

22 C.F.R. § 11.10(a) ................................................................................15

## Other Authorities

2 FAH-2 H-112.1(a) ...............................................................................15

2 FAM § 111.2 ........................................................................................15

3 FAM § 2235 .........................................................................................14

3 FAM § 3631.4(a) ..................................................................................15

3 FAM § 3631.4(a)(3) ..............................................................................15

Gerhard Wagner, *Tort, Social Security, and No-Fault Schemes: Lessons From Real-World Experiments,* 23 Duke J. Comp. & Int'l L. 1 (2012)..........................2

Leonard Y. Nason *et al.,* 29 Mass. Practice *Worker's Compensation* § 5.6 (3d ed. 2003)..........................................................................................17

Restatement (Third) of the Foreign Relations Law of the United States, Part IV, Ch. 5, Subch. B, Intro. Note (1987) ....................................................10

# ARGUMENT

## A.   The Action Is Based On Merlini's Employment.

### 1.   Something Incidental To A Claim Cannot Be The Gravamen Of The Claim.

In the main brief, we observed (Br. at 17-18) that employers, including foreign sovereigns, can fail to obtain insurance for many reasons, and that an injured employee's claim against an employer would be precisely the same no matter the reason the employer was uninsured. And we observed that an injured person who was not employed by a defendant, or who was not injured in the course of her work, would have no claim under Mass. Gen. Laws ch. 152, § 66. Had Canada made a policy decision to purchase Massachusetts workers' compensation insurance yet failed to do so for one reason or another, Merlini's claim would be precisely the same as it is.

So the *reasons* for the lack of insurance are incidental to the claim, while the employment and the workplace injury are indispensable to the claim. That is why Canada's decision not to have insurance cannot be the "particular conduct that constitutes the gravamen of the suit," *OBB Personverkehr AG v. Sachs,* 136 S. Ct. 390, 396 (2015) (internal quotation marks omitted). The claim would have been precisely the same if Canada had been uninsured for some other reason— inadvertence, for example, or mistake of law, or, like too many private employers, a decision to save money and effort and hope that no employee will bring a claim.

Canada makes no attempt to rebut this point—to show that Merlini would have no case if Canada were uninsured for some reason other than deliberate policy, or to show that Merlini would have a case if she had not been a Canadian government worker injured on the job.

Canada remarks throughout its brief that liability under § 66 is strict liability. An uninsured employer's liability under the statute is indeed strict liability, as is the liability of any insurer or a self-insurer under the statute, and indeed, as is the liability of the Canadian government under the Government Employees' Compensation Act, R.S.C. 1985, c. G-5 ("GECA").[1] Workers' compensation insurance is by its nature a strict liability or no-fault system, *see, e.g.,* Gerhard Wagner, *Tort, Social Security, and No-Fault Schemes: Lessons From Real-World Experiments,* 23 Duke J. Comp. & Int'l L. 1, 5 (2012), and the liability of an uninsured employer must be strict liability so that its employees are no worse off than they would have been had the employer obeyed the law. But the strict liability of uninsured employers under Massachusetts law supports our point about the gravamen of the case. We do not need to show that Canada's failure to insure was intentional, or knowing, or even negligent. We do not need to show that Canada

---

[1] In her claim against the Workers' Compensation Trust Fund, Merlini argued that she was entitled to benefits from the Trust Fund because she was not *entitled* to benefits under GECA, which provides that the Minister of Labour "may" pay benefits in the amount and manner that he deems fit. *See* GECA § 7(2). But the Appeals Court rejected that construction of GECA. (Add. 27).

made a conscious decision to disobey the law. All we need to show is that Canada was uninsured, which is undisputed. This is a further illustration of the irrelevance of Canada's decision or policy-making to Merlini's claim.

2. Merlini's Employment, Unlike The Reasons For Canada's Failure To Purchase Insurance, Is Critical To The Case.

Canada claims that Merlini is making an "effort to link the mere fact of her employment to the alleged wrongful conduct in the complaint (Canada's sovereign decision to provide workers' compensation benefits under its own independent system …)". (Br. at 22). This is wrong for two reasons. First, Merlini's employment is not somehow incidental to the case. It is critical. Only employees are entitled to workers' compensation benefits under the Massachusetts statute. A visitor to the consulate who suffered the same injury would have no claim under Mass. Gen. Laws ch. 152, § 66. Nor would Merlini have had a claim under the statute if she had been an independent contractor rather than an employee. *See Thorson v. Mandell,* 402 Mass. 744, 746-47, 525 N.E.2d 375, 377-78 (1988).

Second, Merlini never alleges that Canada's wrongful act was its "sovereign decision" to apply its own law and to ignore Massachusetts law. What Canada failed to do was to purchase insurance (or obtain a license to self-insurer), nothing more and nothing less.

3

3. <u>The Failure To Obtain A License To Self-Insure Is Not The Gravamen Of The Case, And Canada Could Never Have Obtained A License From Massachusetts To Administer Its Own Statutory Scheme.</u>

Canada also suggests (Br. at 21, 23) that because the Massachusetts statute permits employers to obtain licenses to self-insure, Merlini's real claim is simply that Canada failed to get the Massachusetts government's permission to apply "its workers' compensation program." The Massachusetts statute does not work this way. The statutory obligation of employers is to "provide for the payment to … employees of the compensation provided for *by this chapter*." Mass. Gen. Laws ch. 152, § 25A (emphasis supplied). The statute spells out the benefits to be provided: in Merlini's case, for example, the DIA's finding that she had suffered a permanent and total incapacitating injury would have entitled her—had Canada complied with the statute—to "a weekly compensation equal to two-thirds of [her] average weekly wage before the injury." Mass. Gen. Laws ch. 152, § 34A.[2] The statute provides alternate methods to provide those benefits, namely (1) "[b]y insurance with an insurer," *id.* § 25A(1), or (2) "[s]ubject to the rules of the department, by obtaining from the department annually a license as a self-insurer," *id.* § 25A(2). A

---

[2] Contrast GECA, which provides for benefits for locally-engaged staff "in such amount and in such manner as [the Minister of Labour] deems fit." GECA § 7(2). For Canadian government employees in Canada, and for Canadian government employees abroad "other than [persons] locally engaged outside Canada," GECA *does* fix the rate of compensation, with reference to the law of the relevant province. GECA §§ 4(2), 6.

self-insurer that fails "promptly to make payments of compensation provided for *by this chapter*" is liable to revocation or non-renewal of its license. *Id.* § 25A(3) (emphasis supplied). The term "insurer" is defined to include a self-insurer, *id.* § 1(7), and thus a self-insurer must pay benefits and litigate all disputes about what benefits are due in DIA administrative proceedings, just like all other Massachusetts insurers. *See, e.g., id.* § 10 (describing conciliation and hearings in cases of dispute).

We have never suggested that Canada could obtain a license to self-insure *and then administer its own system of benefits.* Most certainly Canada could not obtain a license on that basis. On this point, Canada is simply misreading the Complaint and misunderstanding Massachusetts law. There is no basis for the assertion that Merlini's claim is based on the simple failure to obtain a license, let alone on the failure to obtain a license to administer Canada's own scheme of benefits.

B.  Merlini's Employment Was A Commercial Activity.

We argued, in the main brief (Br. at 18-22), that Merlini's employment was commercial, citing several cases and the legislative history of the FSIA. Canada has chosen not to contest this point. Merlini's employment has *at least* as good a claim to be treated as commercial as the employment of any of the plaintiffs in *Holden v. Canadian Consulate,* 92 F.3d 918, 920 (9th Cir. 1996) ("commercial

officer" who "respond[ed] to inquiries from Canadian companies"), *Segni v. Commercial Office of Spain,* 835 F.2d 160, 162 (7th Cir. 1987) (employee responsible for "developing the marketing of Spanish wines"), or *El-Hadad v. United Arab Emirates,* 496 F.3d 658 (D.C. Cir. 2007) (accountant with supervisory authority over other accountants).

Thus assuming the Court finds that the gravamen of the case was Merlini's employment or injury, there is nothing more to decide. That finding alone is sufficient to show that the District Court erred.

C. <u>In Any Event, The Failure To Obtain Insurance Was a Commercial Activity.</u>

Our main argument, given above and in the main brief, is that the action is based on Merlini's employment and her injury. But even if the action is based on Canada's failure to have insurance, Canada is not immune from suit.

1. <u>The Details Of Canadian Law Would Be Irrelevant Even If Canada Were Right About The Gravamen Of The Case.</u>

Canada's brief details the relevant Canadian law, in particular GECA and other statutes and regulations that explain how Canada treats locally-engaged staff under its own law. Nothing would be served by cataloguing the substantive and procedural differences between Canadian law and Massachusetts law.[3] It is clear

---

[3] We do note one point. Canada (Br. at 5-6) cites Part XI of the Ontario Workplace Safety and Insurance Act, S.O. 1997, c. 16 ("WSIA") as the source for its assertions about Merlini's rights to review of the Canadian government's decision to cease paying her benefits under GECA. It may be a fool's errand to dispute a

that the availability or receipt of benefits in another jurisdiction is no bar to a

Massachusetts worker's entitlement to benefits under Massachusetts law, or to

bringing a claim against an employer uninsured in Massachusetts. *See Barrett v.*

*Transformer Serv., Inc.,* 374 Mass. 704, 710-13, 374 N.E.2d 1325, 1328-29 (1978);

*Lavoie's Case,* 334 Mass. 403, 408-11, 135 N.E.2d 750, 753-54 (1956).

---

foreign government's assertions about its own law, *cf. Animal Sci. Prods. v. Hebei Welcome Pharm. Co. (In re Vitamin C Antitrust Litig.),* 837 F.3d 175, 189 (2d Cir. 2016), *cert. granted,* 138 S. Ct. 734 (2018) (court must defer to foreign government's "sworn evidentiary proffer regarding the construction and effect of its laws and regulations" if reasonable under the circumstances). But we note that under GECA, when a Canadian government employee is "usually employed outside Canada," the employee is deemed to be employed in Ontario *unless the employee is "a person locally engaged outside Canada."* GECA § 6 (emphasis supplied). Nothing in the materials Canada has cited explains why Ontario law would apply to Merlini. Moreover, even if Ontario's WSIA applies to Merlini, and even if Merlini had a right of administrative review, nothing in Part XI supports Canada's assertion that Merlini might be able to "appeal a[n Appeals] Tribunal decision to the Canadian appellate courts" (Br. at 6). Indeed, WSIA § 123(4) provides that an "action or decision of the Appeals Tribunal is final and is not open to question or review in a court," and § 123(5) provides that proceedings before the Appeals Tribunal cannot be enjoined or prohibited by a court or "removed by application for judicial review or otherwise into a court." *Contrast* Mass. Gen. Laws ch. 152, § 12(2) (appeal from DIA Reviewing Board to Appeals Court). As we have argued, the details of Canadian law are irrelevant to the outcome of this case, and perhaps there are other materials Canada could have cited that would explain why these statutes do not mean what they seem to say. But the materials Canada has cited show that even if Merlini did have rights of review as Canada claims, it would not have been simple for her to understand her rights under the relevant foreign law. *Contrast* Mass. Gen. Laws ch. 152, § 6A (once injury occurs, the DIA gives the injured worker a brochure with written notice of her rights "in clear and understandable language").

Canada's references to Canadian law are even potentially relevant only if, as Canada argues, the action is based on its failure to have insurance, rather than on Merlini's employment and injury, as we argue. This is so because Canada has waived any argument that Merlini's employment was not commercial by omitting that point from their brief entirely. Since the gravamen of the action is Merlini's employment and injury, we should prevail on the appeal, whatever the content of Canadian law might be.

But assuming that the case is based on Canada's failure to have insurance, Canada's references to the content of its own law are *still* irrelevant. The fact is that Canada did not obtain workers' compensation insurance or a license as a self-insurer as required by the statute. Canada's discussion of its own law and its decision-making is a lengthy digression into the *reasons why* that is so: Canada has its own workers' compensation scheme that it prefers to administer (Br. at 24-26)[4]; Canadian law would not permit the Canadian government to self-insure on the terms Massachusetts law prescribes (Br. at 28-29); and so on. But it is beyond dispute that the FSIA forbids courts to look to the purpose of a foreign state's act in determining whether the act is or is not commercial. 28 U.S.C. § 1603(d).

---

[4] The claim that Canada legally *could not* comply with the Massachusetts statute under Canadian law (Br. at 26) is seemingly at odds with the position taken by its own political subdivision. The Province of Québec, which has a trade office in Boston, does carry Massachusetts workers' compensation insurance as required by law. (A. 51).

Rather, the court must look to the nature of the course of conduct or the particular transaction or act. *Id.* The relevant conduct here is Canada's failure to obtain insurance.[5] The *purpose* of the conduct, the *reason* for the conduct, or the policy in furtherance of which Canada engaged in the conduct, is irrelevant. As we argued in the main brief, the conduct itself—failure to obtain insurance—is an ordinary commercial omission that, unfortunately, many Massachusetts employers also make, for a variety of reasons. Calling those reasons "sovereign" makes no difference to the analysis.[6]

---

[5] To avoid misunderstanding: the failure to obtain insurance is the relevant conduct *only if the Court rejects the view that the action is not based on Merlini's employment.* We used similar language in a similar context in our main brief when discussing the gravamen issue (Br. at 17) ("the key here is … Canada's failure to have insurance"), and Canada wrongly took that phrase as an acknowledgment that its decision not to have insurance, rather than Merlini's employment, was the gravamen of the case (Br. at 20).

[6] Canada's obligation to comply with Massachusetts law is not, or at least not any longer, at issue in this appeal, though it may become an issue again after remand. In the District Court, Canada posed a jurisdictional challenge and a merits challenge. The merits challenge asserted that Canada was not uninsured in violation of Massachusetts law and thus that Merlini had failed to state a claim for relief. The sole basis for the challenge was Canada's argument that the Reviewing Board's decision on that issue had preclusive effect. The District Court dismissed the case for want of jurisdiction without reaching the sufficiency of the Complaint. Because this Court can affirm a decision on alternate grounds, we addressed the preclusion issue in the brief (Br. at 25-31), and we showed that the Reviewing Board's decision was in any case wrong on the merits (Br. at 31 n.5). Canada has not sought to rebut the force of our arguments, offering only a pro forma footnote on preclusion that is insufficient to avoid waiver of the point (Br. at 10 n.2). *See United States v. Zannino,* 895 F.2d 1, 17 (1st Cir. 1990). So the issue on appeal is not whether Massachusetts law governs Canada's obligations. The issue is simply whether, assuming that Canada was obligated to comply with Massachusetts law, it

The Canadian government is free to make whatever policies it wishes. But it is no more free to cite its own policies as grounds for ignoring the obligation of any employer to obtain workers' compensation insurance than it is to cite its own policies as grounds for, say, age discrimination or other violations of employment law. *Cf. Shih v. Taipei Econ. & Cultural Rep. Office,* 693 F. Supp. 2d 805 (N.D. Ill. 2010) (foreign government office with policy forbidding it to consider job applicants over age 45 not immune from jurisdiction).

The cases Canada cites miss the mark because they presume that Merlini's claim seeks to hold the foreign state or its officials liable for their official governmental acts. Merlini is not suing the Canadian officials who were acting within the scope of their official duties when they made Canada's policy. *Contrast Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,* 115 F.3d 1020, 1028-30 (D.C. Cir. 1997) (claim against foreign officials not within the commercial activity exception when the defendants were sued for the way they performed "their official tasks as administrators of a government program to provide for the health and welfare of Abu Dhabi's citizens and residents"); *Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek (Persero)*, 600 F.3d 171, 178 (2d Cir. 2010) (claim

---

nevertheless has sovereign immunity from suit. *See* Restatement (Third) of the Foreign Relations Law of the United States, Part IV, Ch. 5, Subch. B, Intro. Note (1987) (foreign state may be subject to local law even if immune from enforcement of that law in US courts under the FSIA or otherwise).

was that government official's supervision of subordinate government employee who engaged in a scheme to defraud was negligent ).[7] Rather, Merlini is suing Canada for a workplace injury she sustained while working in the Canadian Consulate in Boston.

> ### 2. Canada's Position Would Allow Foreign Sovereigns To Avoid Jurisdiction In Ordinary Commercial Cases.

Canada seeks to distinguish *Holden* on the grounds that it is a "run-of-the-mill employment dispute." (Br. at 12). The implication of Canada's view is that a foreign state that *happens to* discriminate against (as the plaintiff in *Holden* claimed) older female employees may be subject to jurisdiction, but if the foreign state discriminates against older female employees *as a matter of policy,* then it is immune from jurisdiction, because in such a case the claim is based on the foreign state's policymaking rather than the actions it took in furtherance of its policies. This hypothetical consequence of Canada's view is troubling as a matter of policy, and in any case the court considered and rejected such a claim in *Janini v. Kuwait University,* 43 F.3d 1534 (D.C. Cir. 1995), where the foreign state actually did seek to justify its wrongful act on the basis of deliberate policymaking.

---

[7] Some of the other cases Canada cites turn similarly on acts that only sovereigns can do. *See, e.g., Chettri v. Nepal Rastra Bank,* 834 F.3d 50 (2d Cir. 2016) (claim was for seizure of assets in connection with a criminal investigation); *S.K. Innovation, Inc. v. Finpol,* 854 F. Supp. 2d 99 (D.D.C. 2012) (claims were based on "abuse of official power for corrupt ends" in the context of a criminal investigation).

D. The Non-Commercial Tort Exception Applies If the Commercial Activity Exception Does Not.

We pleaded the non-commercial tort exception to FSIA immunity, 28 U.S.C. § 1605(a)(5), in the alternative. Because that exception can apply only in cases "not otherwise encompassed in" the commercial activity exception, *see id.,* the non-commercial tort exception can apply only if the commercial activity exception does not. Our claim is that the consular employee who failed to secure the cord to the floor was guilty of negligence, and that his negligence was not "the failure to exercise or perform a discretionary function."

If the Court finds that the gravamen of the case was Merlini's employment and injury, as we have proposed, then the Court need not consider the non-commercial tort exception further: Canada concedes that Merlini's employment was commercial, and thus if the gravamen of the case was the employment, then the commercial activity exception applies.

If, on the other hand, the Court finds that the employment and injury was *not* the gravamen of the case, then the Court must go on to consider the non-commercial tort exception. There can be no question, in that case, that Merlini is seeking "money damages … against a foreign state for personal injury … occurring in the United States and caused by the tortious act or omission of … any … employee of that foreign state while acting within the scope of his … employment," namely, the negligence of the employee who failed to secure the

12

cord. *See* 28 U.S.C. § 1605(a)(5). The only remaining question, in that case, is whether the claim is "based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused," *see id.* § 1605(a)(5)(A).

The Court applies a test similar to the test in the discretionary function exception of the Federal Tort Claims Act, 28 U.S.C. § 2680(a), to determine whether the supposedly tortious act was discretionary for FSIA purposes. *See Rodriguez v. Republic of Costa Rica,* 297 F.3d 1, 8-9 (1st Cir. 2002). That test asks whether the conduct was "a matter of choice for the acting employee," and if it was, whether the "challenged conduct" was "of the kind that the discretionary function exception was designed to shield." *Id.* at 9.

Canada focuses its attention on its policy decision and claims that that decision was the kind that the discretionary function exception was "designed to shield." Its argument is unimpeachable as far as it goes, but it ignores the key point: the *decision* not to comply with Massachusetts law *is not the challenged conduct.* As we have already explained, Canada's decision-making is entirely incidental to the claim. On our alternative theory of the case, if the commercial activity exception does not apply, the relevant conduct was the employee's failure to secure the cord, which Canada does not and cannot say was the exercise of a discretionary function.

E.    Canada Is Not Treating Merlini As The United States Treats Its Locally Engaged Staff At Its Embassies And Consulates.

Canada's brief explains in detail its statutory scheme for providing benefits to government employees, including locally-engaged staff, and it then suggests (Br. at 26 n.3) that Canada is acting just as the United States acts in analogous circumstances. This point is of limited importance in a technical or doctrinal sense, but if it were correct it could have considerable persuasive force. Comity, after all, is at the heart of the law of foreign sovereign immunity. *See Verlinden B.V. v. Cent. Bank of Nigeria,* 461 U.S. 480, 486 (1983).

But the point is based on a misunderstanding of relevant US law. The United States does have an analogue to GECA, as Canada says. *See* Federal Employees' Compensation Act, 5 U.S.C. §§ 8101 *et seq.* ("FECA"). But FECA treats locally engaged staff's workers' compensation claims differently than does GECA: under FECA, injured locally engaged staff receive benefits from the US government only if they are not covered by the local workers' compensation law.

The State Department defines "locally employed staff" to mean "foreign nationals and legally resident U.S. citizens employed at a Foreign Service post abroad by a U.S. Government agency that is under Chief of Mission authority." 3 FAM § 2235.[8] "Chief of Mission authority" includes "the authority to direct,

---

[8] "FAM" is the Foreign Affairs Manual, and "FAH" the Foreign Affairs Handbook. The FAM is "the formal written document for recording, maintaining, and issuing

supervise, and coordinate all U.S. Government executive branch employees in the [Chief of Mission's] country or area of responsibility" and "includes all Locally Employed (LE) Staff …" 2 FAH-2 H-112.1(a). A consulate is a Foreign Service "post." *See* 2 FAM § 111.2. Thus a Canadian citizen working at a US consulate in Canada in a clerical role similar to Merlini's would be classified as "locally employed staff."

The State Department's rule on eligibility for FECA benefits for Foreign Service and Civil Service employees "and Eligible Locally Employed Staff" provides as follows: Civil Service employees, Foreign Service employees, "personal services contractors," and spouses and dependent children are entitled to workers' compensation benefits. 3 FAM § 3631.4(a). But locally employed staff can be entitled to benefits only if they "are not covered under the host-country's workers' compensation law." *Id.* § 3631.4(a)(3). So a Canadian clerical worker in Merlini's position at the consulate in Toronto could claim benefits under FECA only if she was not covered under Canadian workers' compensation law.

As Canada correctly observes, FECA provides the exclusive remedy *under US law* for injured US government employees, just as GECA apparently provides the exclusive remedy *under Canadian law* for injured Canadian government

Department of State … directives that address personnel and other matters." 22 C.F.R. § 11.10(a). The FAH elaborates on the FAM.

employees. But the question here is not the US government's liability *under US law,* or the Canadian government's liability *under Canadian law,* but each government's liability under *foreign law* with respect to its locally-engaged staff employed abroad.

Thus it is simply wrong to suggest that Canada is treating Merlini, its injured American employee, just as the United States would treat an injured employee abroad in analogous circumstances. Canada's claim is that its own law governs exclusively *even if* the employee is covered by local workers' compensation law.

F.  <u>The Length and Complexity Of The Proceedings Is Due Only To The Erroneous Claim of Foreign Sovereign Immunity From Suit.</u>

In its brief (Br. at 7-9), Canada notes the long time Merlini has been pursuing her claim, and the multiple proceedings she has brought. If Canada had complied with Massachusetts law, none of these lengthy proceedings would have been necessary. Merlini would have received, and would still be receiving, benefits from Canada's insurer. The administrative judge held that she was permanently and totally disabled, and no one, including Canada (which participated in the proceedings) claimed that his decision was error.

The length and complexity of the case, then, is due entirely to the assertion of foreign sovereign immunity from suit. That assertion led Merlini, first, to seek relief from the trust fund established by the Commonwealth to deal with claims in respect of uninsured employers, and now from her former employer directly.

Canada claims that Merlini, a Massachusetts clerical worker, should instead have pursued her claim for benefits in administrative proceedings in a foreign country. This is contrary to the policy of the Massachusetts statute, which seeks to insure that all employees who are injured on the job in Massachusetts have a remedy:

> The jurisdiction of the state of injury rests on strong practical considerations. It might frequently be more difficult for the injured employee to prove a case in the state where the contract of hire was made than in the state of injury, where the employee would have the benefit of witnesses who could prove the fact of injury. There is the possibility that an employee injured in Massachusetts, if remediless, might become a public charge.

Leonard Y. Nason *et al.,* 29 Mass. Practice *Worker's Compensation* § 5.6 (3d ed. 2003).[9] This is precisely what happened here: Merlini has been left "unable to work, impoverished, and in need of the compensation to which injured Massachusetts workers are entitled." (A. 34).

## CONCLUSION

The Court should reverse the order dismissing the case for lack of jurisdiction and remand the case for further proceedings.

---

[9] While the treatise references the more common case where the contract of hire is made in one state and the injury occurs in another, the policy considerations are the same. Merlini's contract of hire, like all of the other aspects of her employment, was in Massachusetts. (A.6).

Respectfully submitted,

/s/ Theodore J. Folkman
Theodore J. Folkman
MURPHY & KING, P.C.
One Beacon St.
Boston, Mass. 02108
(617) 423-0400
tfolkman@murphyking.com

*Counsel for Cynthia L. Merlini*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,522 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionately spaced typeface using Microsoft Word 2013 in 14 pt. Times New Roman.

/s/ Theodore J. Folkman
Theodore J. Folkman

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 4, 2018, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

John F. Cooney, Esq., and Benjamin E. Horowitz, Esq., counsel of record for the appellee.

/s/ Theodore J. Folkman
Theodore J. Folkman