No. 17-2211

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

————————————

CYNTHIA L. MERLINI,

Plaintiff-Appellant,

v.

CANADA,

Defendant-Appellee.

————————————

On Appeal from the United States District Court
for the District of Massachusetts

————————————

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**
————————————

JENNIFER G. NEWSTEAD
*Legal Adviser*
*U.S. Department of State*
*Washington, DC 20520*

JOSEPH H. HUNT
*Assistant Attorney General*

ANDREW E. LELLING
*United States Attorney*

SHARON SWINGLE
MICHAEL SHIH
*Attorneys, Appellate Staff*
*Civil Division, Room 7268*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 353-6880*
*michael.shih@usdoj.gov*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

STATEMENT ............................................................................................................. 3

ARGUMENT ............................................................................................................. 8

    A.    The District Court's Judgment Should Be Reversed Because
            Plaintiff's Action Is "Based Upon" Her Trip-And-Fall Accident ............ 8

    B.    If This Court Accepts The District Court's Gravamen Analysis,
            The Judgment Should Be Affirmed .......................................................... 15

CONCLUSION ........................................................................................................ 20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek,*
600 F.3d 171 (2d Cir. 2010) ............................................................ 15

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.,*
137 S. Ct. 1312 (2017) .................................................................... 10

*Boos v. Barry,*
485 U.S. 312 (1988) ........................................................................ 19

*Certain Interested Underwriters at Lloyd's, London v. Stolberg,*
680 F.3d 61 (1st Cir. 2012) ............................................................. 12

*Fagot Rodriguez v. Republic of Costa Rico,*
297 F.3d 1 (1st Cir. 2002) .......................................................... 10, 16

*Greem v. Cohen,*
11 N.E.2d 492 (Mass. 1937) ........................................................ 6, 12

*Holden v. Canadian Consulate,*
92 F.3d 918 (9th Cir. 1996) ............................................................. 14

*Janini v. Kuwait Univ.,*
43 F.3d 1534 (D.C. Cir. 1995) ......................................................... 14

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,*
115 F.3d 1020 (D.C. Cir. 1997) ....................................................... 17

*In re Merlini,*
54 N.E.3d 606 (Mass. App. Ct. 2016) (tbl.) ...................................... 5

*Merlini v. Canada,*
280 F. Supp. 3d 254 (D. Mass. 2017) ........................... 3, 4, 5, 6, 7, 10, 16, 17

*Millen Indus., Inc. v. Coordination Council for N. Am. Affairs,*
855 F.2d 879 (D.C. Cir. 1988) ......................................................... 17

*OBB Personenverkehr AG v. Sachs,*
136 S. Ct. 390 (2015) ........................................ 1, 8, 9, 10, 11, 12

*Pena v. Geszpenc,*
No. 00-3172-F, 2002 WL 1275815 (Mass. Sup. Ct. June 11, 2002) ........................... 12

*Republic of Argentina v. Weltover Inc.,*
504 U.S. 607 (1992) ...................................................................................9, 15, 17

*Saudi Arabia v. Nelson,*
507 U.S. 349 (1993) .....................................................................................8, 13, 14

*Shansky v. United States,*
164 F.3d 688 (1st Cir. 1999) ...................................................................... 10

*Truong v. Wong,*
775 N.E.2d 405 (Mass. App. Ct. 2002) ...................................................... 12

*Verlinden B.V. v. Central Bank of Nigeria,*
461 U.S. 480 (1983) ........................................................................................ 3

## Statutes:

Federal Tort Claims Act:
28 U.S.C. § 2680(a) ........................................................................................ 9

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602 *et seq.*................................. 3
28 U.S.C. § 1604................................................................................................ 3
28 U.S.C. § 1605(a)(2) ...................................................................... 1, 3, 8 9, 15
28 U.S.C. § 1605(a)(5) .............................................................................. 3, 10
28 U.S.C. § 1605(a)(5)(A)...............................................................................1, 3, 8, 9

5 U.S.C. § 8101....................................................................................................... 20

Mass. Gen. Laws, pt. 1, tit. XXI:
Ch. 152, §§ 25A(1)-(2)............................................................................................. 5
Ch. 152, § 66............................................................................................................. 6

## Foreign Statutes (Can.):

Government Employees Compensation Act, R.S.C. 1985, c. G-5,
§§ 3(2), 7(1)-(2)........................................................................................ 4

**Other Authorities:**

Letter from Office of Diplomatic Law and Litigation, Office of the
 Legal Adviser (Sept. 11, 1990), *1989-90 Digest of United States Practice in
 International Law 1989-1990* ............................................................................. 18

Restatement (Fourth) of the Foreign Relations Law of the
 United States (2018) ....................................................................................... 18

Restatement (Third) of the Foreign Relations Law of the
 United States (1987) ....................................................................................... 18

3 U.S. State Dep't, Foreign Affairs Manual .............................................. 18, 19

# INTRODUCTION

The United States respectfully submits this brief in response to the Court's order inviting the Solicitor General to express the government's views on "[w]hether Canada enjoys sovereign immunity under the Foreign Sovereign Immunit[ies] Act (FSIA)" for plaintiff's claim, "or whether no such immunity applies due to either the commercial activity exception, 28 U.S.C. § 1605(a)(2), or the noncommercial tort exception, *id.* at § 1605(a)(5), of the FSIA." Letter, Doc. No. 00117356973, *Merlini v. Canada*, No. 17-2211 (Oct. 25, 2018).

In the view of the United States, the judgment of the district court should be reversed because the court incorrectly identified the conduct that plaintiff's action is "based upon." *See* 28 U.S.C. § 1605(a)(2) (excepting actions "based upon a commercial activity"); *id.* § 1605(a)(5)(A) (excepting from the noncommercial-tort exception claims "based upon" a discretionary function). As the Supreme Court explained in *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390 (2015), an action is "based upon" its "gravamen"—that is, the "acts that actually injured" a plaintiff. *Id.* at 396.

Here, the district court concluded that plaintiff's action is based upon Canada's choice of workers' compensation systems. But that conclusion cannot be reconciled with the Supreme Court's approach to the gravamen inquiry. Plaintiff alleges that Canada must pay her damages for injuries she sustained after she tripped over a telephone cord that a Canadian government employee had negligently placed. The trip-and-fall accident thus forms the gravamen of plaintiff's action. Because that

gravamen constitutes neither commercial activity nor a discretionary function, the judgment should be reversed and the case remanded for further proceedings.

If the Court agrees with the district court's view that the gravamen of plaintiff's action is Canada's choice of workers' compensation systems, however, the United States urges in the alternative that the judgment be affirmed. The district court correctly ruled both that Canada's creation and administration of a universally applicable workers' compensation regime constitutes not commercial but instead sovereign activity, and that Canada's discretionary choice of regimes is susceptible to policy judgment and therefore protected by the discretionary-function exception to the noncommercial-tort exception.

The United States has a substantial interest in the questions of foreign sovereign immunity raised in this case. As the government's amicus brief in *Sachs* explained while urging the approach adopted by the Court, the correct application of the gravamen inquiry advances the United States' institutional interest in the proper interpretation of laws relating to foreign sovereign immunity. *See* Brief of the United States as Amicus Curiae, *OBB Personenverkehr AG v. Sachs*, No. 13-1067, 2015 WL 1938761 (U.S. Apr. 24, 2015). More generally, the proper interpretation and application of the FSIA affects the treatment of foreign sovereigns in U.S. courts, with potential consequences for our foreign relations and for the reciprocal treatment of the United States government by foreign courts.

**STATEMENT**

1.      The Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602 *et seq.*,

establishes "a comprehensive set of legal standards governing claims of immunity in

every civil action against a foreign state." *Verlinden B.V. v. Central Bank of Nigeria*, 461

U.S. 480, 488 (1983). Section 1604 provides that a foreign state is "immune from the

jurisdiction of the courts of the United States" unless the lawsuit falls within one of

the FSIA's enumerated exceptions to immunity. 28 U.S.C. § 1604.

This appeal concerns two such exceptions. The first is the commercial-activity

exception, which provides that a foreign state is not immune from any "action" that is

"based upon a commercial activity carried on in the United States by the foreign

state." 28 U.S.C. § 1605(a)(2). The second is the noncommercial-tort exception,

which provides that a foreign state is not immune from any action "not otherwise

encompassed" by the commercial-activity exception, in which "money damages are

sought against a foreign state for personal injury . . . occurring in the United States

and caused by the tortious act or omission of" that government's employee "while

acting within the scope of his office or employment." *Id.* § 1605(a)(5). An exception

to this latter exception restricts it to torts that are not "based upon the exercise or

performance or the failure to exercise or perform a discretionary function regardless

of whether the discretion be abused." *Id.* § 1605(a)(5)(A).

2.      Plaintiff Cynthia Merlini, a U.S. citizen, was a clerical employee of the

Canadian Consulate General in Boston. *Merlini v. Canada*, 280 F. Supp. 3d 254, 255

(D. Mass. 2017). Her duties included "answering the telephone, maintaining files[,] and typing letters." *Id.* Plaintiff alleges that, "while preparing coffee and tea for a meeting at the Consulate's office, she tripped over an unsecured speakerphone cord and fell." *Id.* She further alleges that "[a]n employee of the Consulate [had] negligently failed to secure the speakerphone cord to the floor." A7.[1] She claims that, as a result of that employee's negligence, plaintiff "suffered a serious bodily injury that rendered her unable to work." *Merlini*, 280 F. Supp. 3d at 255.

The Government of Canada paid workers' compensation benefits to plaintiff for approximately eight months. *Merlini*, 280 F. Supp. 3d at 255. These benefits were disbursed pursuant to a Canadian statute creating a uniform workers' compensation scheme for accidents occurring "within or outside Canada." *See* Government Employees Compensation Act, R.S.C. 1985, c. G-5, §§ 3(2), 7(1)-(2). When the benefit payments ceased, plaintiff did not seek appellate review in Canada despite being entitled to do so. *Merlini*, 280 F. Supp. 3d at 255.

Plaintiff instead filed an administrative claim for workers' compensation benefits with the Massachusetts Department of Industrial Accidents. *Merlini*, 280 F. Supp. 3d at 255. She claimed that she was entitled to receive benefits from the Massachusetts Workers' Compensation Trust Fund because Canada's workers' compensation system allegedly violated Massachusetts workers' compensation law. *Id.*

_____

[1] Citations in this format refer to the parties' joint appendix.

at 255-56.  A Commonwealth administrative law judge ("ALJ") agreed with plaintiff, but a Commonwealth reviewing board reversed the ALJ's initial decision.  The board found that "1) Canada was not within the Commonwealth's personal jurisdiction, 2) Canada was not improperly uninsured . . . , and 3) [plaintiff] had no claim because she was entitled to benefits under Canadian law."  *Id.* at 256 (describing board decision).  Plaintiff appealed the board's decision to the Massachusetts Appeals Court, which affirmed in an unpublished opinion.  *See In re Merlini*, 54 N.E.3d 606 (Mass. App. Ct. 2016) (tbl.).  The court held that, because plaintiff was entitled to benefits under Canadian law, she could not recover benefits from the Fund.  *See Merlini*, 280 F. Supp. 3d at 256.  Plaintiff did not petition the Massachusetts Supreme Judicial Court for further review.  *Id.*

**3.**     In 2017, plaintiff brought this lawsuit in federal district court.  Her single-count complaint alleged that the trip-and-fall incident had injured her, A6-7, and sought money damages from Canada under Massachusetts law, A7.  The complaint further alleged that Canada had failed to comply with Massachusetts workers' compensation law.  A8.  Canada could have complied either by purchasing workers' compensation insurance or by obtaining a self-insurer license from the Commonwealth.  *See* Mass. Gen. Laws pt. I, tit. XXI, ch. 152, §§ 25A(1)-(2).  There is no dispute that, to the extent these requirements apply to Canada, Canada is not in compliance with them.

Although Massachusetts does not require "employers to come under th[is] . . . scheme of compensation," the system is structured to "leave non-subscribing employers in such a disadvantageous position that hardly any employer could afford not to accept the insurance provisions of the act." *Greem v. Cohen*, 11 N.E.2d 492, 494 (Mass. 1937). The system accomplishes this by, among other things, eliminating certain common-law defenses in "[a]ctions brought against employers to recover damages for personal injuries . . . by an employee in the course of his employment." Mass. Gen. Laws pt. 1, tit. XXI, ch. 152, § 66. In particular, "it shall not be a defense . . . [t]hat the employee's injury did not result from negligence or other fault of the employer, if such injury arose out of and in the course of employment." *Id.* Those defenses are restored, however, in "actions to recover damages for personal injuries received by employees of" an employer in compliance with Massachusetts workers' compensation law. *Id.* § 67.

Relying on these provisions, plaintiff alleged that Canada "is strictly liable for [her] damages, without regard to fault." A9.

**4.** The district court dismissed the complaint for want of subject-matter jurisdiction. The court first concluded that plaintiff's action was based upon Canada's "decision to provide its own system of benefits to its employees" without complying with Massachusetts workers' compensation law. *Merlini*, 280 F. Supp. 3d at 257. The court then concluded that the action falls outside both the commercial-activity and the noncommercial-tort exceptions to foreign sovereign immunity in the FSIA.

6

As to the commercial-activity exception, the court ruled that Canada's decision to adopt an internationally uniform system of workers' compensation benefits was sovereign and not commercial in nature, because Canada had exercised uniquely sovereign authority "to create and organize a workers' compensation program" that would apply to all of its employees. *Merlini*, 280 F. Supp. 3d at 257. This decision, the court reasoned, "is not comparable to exercising a power that could also be leveraged by private citizens." *Id.* at 258. As to the noncommercial-tort exception, the court ruled that plaintiff's claim was covered by the discretionary-function exception to that exception because Canada's choice of workers' compensation regime was "grounded in . . . social, economic, and political policy and [was] based on a plausible policy justification." *Id.* The court therefore concluded that Canada remains immune from suit under the FSIA.[2]

---

[2] Because the court dismissed plaintiff's claim on this basis, the court did not address whether plaintiff's claim is precluded by the Massachusetts review board's determination that Massachusetts law did not require Canada to obtain workers' compensation insurance or a self-insurer certification. The court also did not address whether, even if plaintiff's claim is not precluded, Massachusetts could require Canada to comply with Massachusetts workers' compensation law. The government expresses no view on these issues.

## ARGUMENT

**A.     The District Court's Judgment Should Be Reversed Because Plaintiff's Action Is "Based Upon" Her Trip-And-Fall Accident.**

This appeal turns on the conduct that plaintiff's lawsuit is "based upon." 28 U.S.C. § 1605(a)(2), (5)(A). Her complaint alleges that she sustained personal injuries after she tripped over a negligently placed phone cord, so the circumstances of plaintiff's trip-and-fall accident form the gravamen of her suit. Because that gravamen constitutes neither commercial activity nor a discretionary function, the district court's contrary judgment should be reversed and the case remanded for further proceedings.

1.     Under the FSIA, Canada is immune from plaintiff's lawsuit unless her action falls within a statutory exception to immunity. Canada cannot invoke sovereign immunity against an action "based upon" commercial activity that has an appropriate nexus with the United States. 28 U.S.C. § 1605(a)(2). Canada also cannot invoke immunity against an action seeking "money damages . . . for personal injury . . . caused by the tortious act or omission" of a Canadian government employee "acting within the scope of his office or employment," except to the extent that act or omission was "based upon" a "discretionary function." *Id.* § 1605(a)(5)(A).

"[A]n action is 'based upon' the 'particular conduct' that constitutes the 'gravamen' of the suit." *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 396 (2015) (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 358 (1993)). The gravamen inquiry does not turn on "an exhaustive claim-by-claim, element-by-element" analysis of each

cause of action a plaintiff asserts. *Id.* The inquiry instead "zeroe[s] in on the core of the suit"—that is, the "acts that actually injured" the plaintiff bringing the action. *Id.*

Plaintiff's complaint demonstrates that the gravamen of her action is a Canadian government employee's allegedly negligent failure to secure a speakerphone cord to the floor. A7 (describing the accident). This common-sense conclusion is underscored by the relief plaintiff is seeking: money damages for "physical and mental pain and suffering, medical and related expenses, past and future lost wages and benefits, physical dysfunction, and loss of earning capacity." *Id.* All of these injuries arise from plaintiff's trip-and-fall accident. The circumstances of that accident therefore form the gravamen of her action.

Understood in this proper light, plaintiff's claim is not "based upon . . . commercial activity" under the FSIA. 28 U.S.C. § 1605(a)(2). That exception applies only to actions that "are the *type* of actions by which a private party engages in 'trade and traffic or commerce.'" *Republic of Argentina v. Weltover Inc.*, 504 U.S. 607, 614 (1992) (emphasis in original). The allegedly negligent placement of a phone cord within the Canadian Consulate's offices has nothing to do with trade, traffic, or commerce.

Plaintiff's lawsuit is also not "based upon" a "discretionary function" under the discretionary-function exception to the FSIA's noncommercial-tort exception. 28 U.S.C. § 1605(a)(5)(A). That exception is modeled on the discretionary-function exception of the Federal Tort Claims Act, *id.* § 2680(a), and is governed by the same

two-step test. *Fagot Rodriguez v. Republic of Costa Rica*, 297 F.3d 1, 9 (1st Cir. 2002) (holding that the exception applies when a foreign sovereign's acts are discretionary in nature and are susceptible to policy analysis). Although the placement of a phone cord is obviously discretionary, no "plausible policy justification could have undergirded" that choice. *See Shansky v. United States*, 164 F.3d 688, 692 (1st Cir. 1999). The case should therefore be remanded to the district court to determine in the first instance whether plaintiff's lawsuit satisfies the requirements of the noncommercial-tort exception. *See* 28 U.S.C. § 1605(a)(5).[3]

2.      The district court erroneously concluded that plaintiff's claim is "'based upon' [Canada's] decision to provide its own system of benefits to its employees" without complying with Massachusetts workers' compensation law. *Merlini v. Canada*, 280 F. Supp. 3d 254, 257 (D. Mass. 2017). But Canada's choice of workers' compensation systems is not the "act[] that actually injured" plaintiff. *See Sachs*, 136 S. Ct. at 396. That act was the allegedly tortious placement of a telephone cord.

---

[3] We note that the noncommercial-tort exception could apply to plaintiff's lawsuit even though plaintiff's state-law cause of action may not require plaintiff to prove that her personal injuries were "caused by the tortious act or omission of" a Canadian government employee. *See* 28 U.S.C. § 1605(a)(5). That is because the showing a plaintiff must make to demonstrate that an action falls within an FSIA exception for jurisdictional purposes need not overlap with the elements a plaintiff must prove to establish liability on the action's constituent claims. Indeed, cases lacking such overlap "have been the norm." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1323-24 (2017) (listing examples).

Canada defends the court's conclusion by arguing that plaintiff's state-law cause of action rests on provisions of Massachusetts law eliminating noncompliant employers' ability to assert certain common-law defenses in personal-injury actions brought by their employees. *See* Appellee's Br. 20, 23. But plaintiff's reliance on these provisions of Massachusetts law does not mean her lawsuit is "based upon" Canada's choice of workers' compensation regime. The cited provisions merely determine the liability rule that plaintiff believes should govern her state-law claim on the merits.

Canada responds that its compliance (or lack thereof) with Massachusetts workers' compensation law is an essential element of plaintiff's cause of action. *See* Appellee's Br. 20 (citation omitted). But the Supreme Court rejected an "element-by-element" approach to the gravamen inquiry in *Sachs*. The *Sachs* plaintiff was injured after she fell from a train platform in Austria and was hit by a train. 136 S. Ct. at 393. She argued that her claims (for negligence, strict liability for failure to warn, and breach of implied warranty) fell within the commercial-activity exception because they were "based upon" her purchase of a train pass from the Austrian government— which was a necessary "*element*" to establish Austria's liability for her claims. *Id.* at 395 (emphasis in original). The Supreme Court disagreed, holding that the "gravamen" of plaintiffs' lawsuit was the "tragic episode in Austria, allegedly caused by wrongful conduct and dangerous conditions in Austria, which led to injuries suffered in Austria." *Id.* at 396. The fact that Canada's choice of workers' compensation regime

is an element of plaintiff's state-law claim thus does not alter the reality that plaintiff was "actually injured" by the negligent placement of a telephone cord. *See id.* at 396.

This conclusion is further buttressed by state-law decisions indicating that a claim brought against a noncompliant employer under Sections 66 and 67 remains a claim that sounds in tort. As early as 1937, the Supreme Judicial Court of Massachusetts described such an action as a claim for "personal injury received by the plaintiff while in the employ of the defendant." *Greem v. Cohen*, 11 N.E.2d 492, 493 (Mass. 1937). Both Massachusetts courts and this Court have reaffirmed that principle. *See, e.g.*, *Truong v. Wong*, 775 N.E.2d 405, 407 (Mass. App. Ct. 2002) (explaining that Sections 66 and 67 allow "an injured employee" to sue a noncompliant employer "in a civil action for the full scope of tort damages"); *Pena v. Geszpenc*, No. 00-3172-F, 2002 WL 1275815, at *2 (Mass. Sup. Ct. June 11, 2002) ("[Sections 66 and 67] permit[] an employee to recover common law tort damages against his employer for injuries suffered in the course of his employment."); *accord Certain Interested Underwriters at Lloyd's, London v. Stolberg*, 680 F.3d 61, 67 (1st Cir. 2012) ("[Sections 66 and 67] authoriz[e] [a] private action in tort against [an] employer who has failed to maintain the required workers' compensation insurance."). Massachusetts's decision to impose more stringent liability rules on a subset of tort actions does not strip those actions of their fundamental personal-injury character.

> **3.** Plaintiff takes a different view of the gravamen of her lawsuit. She asserts that her claim is actually "based upon" her employment relationship with

Canada. *See* Appellant's Br. 13-18. But this argument is in substantial tension with the Supreme Court's decision in *Saudi Arabia v. Nelson*. The *Nelson* plaintiffs—Scott Nelson and his wife Vivian—sued the Saudi government for torts arising from physical injuries Scott allegedly suffered at the hands of Saudi agents. The Nelsons claimed their action fell within the commercial-activity exception because the Saudi government had "recruited Scott Nelson" to work at a hospital, "signed an employment contract with him," and "subsequently employed him." 507 U.S. at 358. The Court rejected the Nelsons' argument because, "[w]hile these activities led to the conduct that eventually injured the Nelsons, they are not the basis for the Nelsons' suit." *Id.* Indeed, those activities alone would "entitle the Nelsons to nothing under their theory of the case" because "[t]he Nelsons [did] not . . . allege[] breach of contract, . . . but personal injuries caused by [Saudi agents'] intentional wrongs and . . . negligent" behavior. *Id.* The Court therefore held that "[t]hose torts, and not the arguably commercial activities that preceded their commission, form[ed] the basis for the Nelsons' suit." *Id.*

Here too, plaintiff's employment relationship with Canada "led to the conduct that eventually injured" her. *See Nelson*, 507 U.S. at 358. Just as in *Nelson*, however, that relationship is "not the basis for [her] suit" because the fact of her employment would "entitle [her] to nothing under [her] theory of the case"—that she was injured after tripping over a phone cord. Nor can *Nelson* be distinguished on the ground that, with the exception of plaintiffs' failure-to-warn claim (which the Court treated as an

13

insubstantial "semantic ploy," 507 U.S. at 363), none of the Nelson plaintiffs' claims required an employment relationship as an element of liability.  To be sure, this plaintiff's employment relationship with Canada appears to be an element of her cause of action.  *See* Appellant's Br. 17.  But under *Sachs*'s elaboration of the gravamen standard, the mere fact that an employment relationship is an element of plaintiff's claim does not convert that element into the gravamen of her lawsuit.

Plaintiff's cited authorities (Appellant's Br. 15-16) further underscore the distance between her employment and her injury.  In *Holden v. Canadian Consulate*, a former Canadian government employee sued Canada for wrongful termination because Canada had allegedly fired her while continuing to employ a younger man.  92 F.3d 918, 921 (9th Cir. 1996).  The court held that the employee's breach-of-contract action was "based [up]on the fact that she was terminated and a younger man was not."  *Id.*  Similarly, in *Janini v. Kuwait University*, former Kuwaiti employees sued Kuwait for benefits and back pay after the government unilaterally abrogated their contracts.  43 F.3d 1534, 1535 (D.C. Cir. 1995).  The court likewise held that the employees' breach-of-contract actions were "based upon the conduct that caused the losses alleged, namely the termination of the employment contracts."  *Id.* at 1536.  But here, plaintiff's injury arose not from the breach of an employment contract but from the negligent placement of a phone cord—an injury to which the fact of her employment is irrelevant.

For these reasons, the government respectfully urges this Court to reverse the district court's judgment and remand the case for further proceedings consistent with the gravamen inquiry set forth above.

**B.      If This Court Accepts The District Court's Gravamen Analysis, The Judgment Should Be Affirmed.**

If the Court nevertheless agrees with the district court's view that the gravamen of plaintiff's action is Canada's choice of workers' compensation systems, the government urges in the alternative that the judgment be affirmed.

**1.**      Accepting the premise that the gravamen of plaintiff's action is Canada's choice of workers' compensation systems, the district court was correct to conclude that plaintiff's action is not "based upon" commercial activity.  *See* 28 U.S.C. § 1605(a)(2).  A sovereign act is "commercial" only when the sovereign "acts, not as a regulator of a market, but in the manner of a private player within it."  *Weltover*, 504 U.S. at 614.  But Canada opted out of the Massachusetts workers' compensation system in a manner available exclusively to sovereigns—by enacting a statute creating an alternate and uniform compensation regime for all Canadian employees, wherever in the world they might be.  Because the administration of a statutorily created workers' compensation system is quintessentially sovereign in nature, the commercial-activity exception would not apply to plaintiff's lawsuit.  *See Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek*, 600 F.3d 171, 178 (2d Cir. 2010) (holding that the commercial-activity exception did not apply to the administration of a national health-insurance

program because such operations "do not equate to those of an independent actor in the private marketplace of potential health insurers").

The district court also correctly ruled that Canada's choice of workers' compensation system would fall within the discretionary-function exception to the noncommercial-tort exception. That decision is clearly discretionary because it "involves an element of choice," and is clearly "of the kind that the exception was designed to shield" because it is "grounded in social, economic[,] or political policy." *Merlini*, 280 F. Supp. 3d at 258 (citing *Fagot Rodriguez*, 297 F.3d at 9).

For these reasons, Canada would remain immune from suit if the district court's gravamen analysis were correct.

**2.** On appeal, plaintiff does not challenge the district court's discretionary-function analysis on the court's terms.[4] Plaintiff argues, however, that Canada's choice of workers' compensation system constitutes commercial activity because "[b]eing uninsured is something any employer can do, wittingly or unwittingly." Appellant's Br. 22-23; *see* Reply Br. 8-9. But that superficial comparison elides the sovereign component of Canada's decision to establish its own regulatory regime for compensating injured employees worldwide, and to prohibit its agencies from deviating from that regime's rules. *See* Appellee's Br. 31. The creation and

---

[4] Plaintiff argues only that the district court incorrectly identified the gravamen of her action, which is actually "a failure to secure a cord, creating a trip hazard." *See* Appellant's Br. 25. This argument is correct, as explained above. *Supra* pp. 8-14.

administration of such a program is uniquely sovereign in nature. *See Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1030 (D.C. Cir. 1997) (holding that the commercial-activity exception did not apply to the administration of a government program to provide health and welfare benefits, even though the provision of such benefits "relate in certain respects to commercial activity"). And "jurisdiction will not obtain" under the commercial-activity exception if plaintiff's action is "based [up]on a sovereign activity," even "when a transaction partakes of both commercial and sovereign" features. *Millen Indus., Inc. v. Coordination Council for N. Am. Affairs*, 855 F.2d 879, 885 (D.C. Cir. 1988).

Plaintiff responds that, when evaluating whether a foreign government's actions are sovereign or commercial, the government's reasons for undertaking those actions cannot be considered. Appellant's Br. 23 (citing *Weltover*, 504 U.S. at 616); Reply Br. 8. But the district court's ruling did not rest on Canada's persuasive—and peculiarly sovereign—reasons for declining to participate in Massachusetts workers' compensation system and to seek certification from Massachusetts as a self-insurer. *See* Appellee Br. 28-29. The court instead concluded that Canada's "decision to offer and structure its own form of benefits is not comparable to exercising a power that could also be leveraged by private citizens." *Merlini*, 280 F. Supp. 3d at 257-58.

Plaintiff also cites a letter from the Department of State stating that, "as employers in the United States, [foreign] missions are subject to relevant federal and state employment laws and regulations unless they are exempted from these rules by

17

U.S. or international law." Appellant's Br. 26 n.4 (quoting Letter from Office of Diplomatic Law and Litigation, Office of the Legal Adviser (Sept. 11, 1990), *1989-90 Digest of United States Practice in International Law 1989-1990*, ch. 10, § E(4)(c), at 391-93) (alteration in original). The letter further states that "no U.S. law, treaty provision, or rule of customary international law" exempts a foreign sovereign "from participating in a workers compensation plan if [state or] local law so requires." *See id.* To the extent these statements reflected the considered views of the Department at the time, they do not advance plaintiff's cause. As plaintiff acknowledges, the fact that legislatures may prescribe rules governing foreign conduct does not mean that courts may adjudicate violations of those rules notwithstanding the inapplicability of any FSIA exception. *Id.*; *accord* Restatement (Third) of the Foreign Relations Law of the United States, pt. IV, ch. 5, subch. B, intro. note (1987); Restatement (Fourth) of the Foreign Relations Law of the United States § 401 & cmts. (2018).

    **3.** Endorsing plaintiff's view of commercial activity would prejudice the United States government's interests. In general, "[i]t is the policy of the U.S. Government that all [embassies and consulates] employ locally employed . . . staff consistent with host country law insofar as U.S. law is not violated and adoption of local law is consistent with the U.S. public interest." 3 U.S. State Dep't, Foreign Affairs Manual § 7113.3; *see id.* § 7224.2-1(a). The Department of State determines, on a country-by-country basis and in light of this policy, whether participation in local workers' compensation programs is warranted. But at many posts, the workers'

compensation program for "U.S. Government employees employed by the Department of State" remains the Federal Employees' Compensation Act. *Id.* § 3631.2 (citing 5 U.S.C. 8101 *et seq.*). And many foreign nationals employed by U.S. embassies and consulates—including Canadian citizens employed by the United States in Canada—are currently entitled to workers' compensation benefits in virtue of United States law, not local law. Should foreign courts accept plaintiff's theory of sovereign immunity as a reciprocal matter, the United States could face increased exposure in similar claims abroad. *See Boos v. Barry*, 485 U.S. 312, 323 (1988) (highlighting the "concept of reciprocity").

## CONCLUSION

For these reasons, the judgment of the district court should be reversed; or, in the alternative, affirmed.

Respectfully submitted,

JENNIFER G. NEWSTEAD
  *Legal Adviser*
  *U.S. Department of State*
  *Washington, DC 20520*

JOSEPH H. HUNT
  *Assistant Attorney General*

ANDREW E. LELLING
  *United States Attorney*

SHARON SWINGLE
  */s/ Michael Shih*
  _____
MICHAEL SHIH
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7268*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 353-6880*
  *michael.shih@usdoj.gov*

February 2019

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(5) because it contains 4,622 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Michael Shih*
Michael Shih

## CERTIFICATE OF SERVICE

I hereby certify that, on February 25, 2019, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Michael Shih
Michael Shih