IN THE

# United States Court of Appeals
# for the First Circuit

---

CYNTHIA L. MERLINI,

*Plaintiff-Appellant,*

v.

CANADA,

*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MASSACHUSETTS
(HONORABLE NATHANIEL M. GORTON)

---

## APPELLEE'S PETITION FOR PANEL REHEARING
## AND REHEARING EN BANC

---

Simon A. Steel[*]
(CA1 Bar No. 1189353)
Laura A. Seferian[*]
(CA1 Bar No. 1189422)
DENTONS US LLP
1900 K Street NW
Washington, DC 20006
(202) 496-7077
simon.steel@dentons.com
*Counsel for Appellee Canada*

---

[*] Steel admitted in New York only; Seferian in Illinois and Virginia only.

# TABLE OF CONTENTS

Page

RULE 35(b)(1) STATEMENT ...................................................................1

INTRODUCTION AND SUMMARY ........................................................2

REASONS FOR GRANTING THE PETITION .......................................3

A.    The Panel Decision Conflicts with the Supreme Court's Decisions in *Sachs* and *Nelson*, Decisions of Other Courts of Appeals and FSIA's Text by Misidentifying the Gravamen of the Complaint ................................3

       1.    The Panel Erred in Treating Merlini's Claim like an Employment Contract Claim .................................................................4

       2.    The Panel Erred by Focusing on "Failure to Comply" Instead of Canada's Sovereign Activity ....................................................6

B.    The Panel Decision Involves Questions of Exceptional Importance and Conflicts with Authoritative Decisions of Other Circuits ............................10

       1.    The Panel Decision Conflicts with FSIA's Goals and U.S. Government Views and Practice, and Threatens to Impede Diplomatic, Consular and International Organization Operations throughout the United States ...........................................10

       2.    The Panel Decision Conflicts with D.C. Circuit Precedent and International Law by Asserting Jurisdiction to Enforce State Regulations Against a Consular Policy Decision ...............................14

       3.    The Panel Decision Conflicts with Second and Fourth Circuit Precedents and International Authorities by Deeming Merlini's Consular Employment "Commercial" ................................................15

CONCLUSION ........................................................................................18

CERTIFICATE OF COMPLIANCE .......................................................19

CERTIFICATE OF SERVICE ................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Ins. Ass'n v. Garamendi*,
 539 U.S. 396 (2003)...........................................................................10

*Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek*,
 600 F.3d 171 (2d Cir. 2010) ..................................................................6

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
 137 S. Ct. 1312 (2017).................................................................15, 17

*Butters v. Vance Int'l, Inc.*,
 225 F.3d 462 (4th Cir. 2000) ...............................................................17

*Crum v. Kingdom of Saudi Arabia*,
 2005 WL 3752271 (E.D. Va. July 13, 2005)......................................17

*El-Hadad v. United Arab Emirates*,
 496 F.3d 658 (D.C. Cir. 2007)..............................................................16

*Gregorian v. Izvestia*,
 871 F.2d 1515 (9th Cir. 1989) ...............................................................6

*Jam v. Int'l Fin. Corp.*,
 139 S. Ct. 759 (2019)...........................................................................12

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nayhan*,
 115 F.3d 1020 (D.C. Cir. 1997).........................................................5, 6

*Kato v. Ishihara*,
 360 F.3d 106 (2d Cir. 2004) .................................................................16

*MacArthur Area Citizens Ass'n v. Republic of Peru*,
 809 F.2d 918 (D.C. Cir. 1987)..............................................................14

*Merlini v. Canada*,
 926 F.3d 21 (1st Cir. 2019)............................................................*passim*

*Merlini v. Consulate Gen. of Canada*,
 2015 WL 1781184 (Mass. Dep't Indus. Accidents. Apr. 9, 2015)....................12

ii

*Nnaka v. Federal Republic of Nigeria*,
 756 Fed. Appx. 16 (D.C. Cir. 2019) ................................................................10

*OBB Personenverkehr AG v. Sachs*,
 136 S. Ct. 390 (2015) ..................................................................*passim*

*Price v. Ry. Exp. Agency*,
 322 Mass. 476, 78 N.E.2d 13 (1948) ..................................................7

*Saudi Arabia v. Nelson*,
 507 U.S. 349 (1993) ..................................................................*passim*

**Statutes**

5 U.S.C. § 8101 ..................................................................12

28 U.S.C. § 1605(a)(2) ..................................................................*passim*

28 U.S.C. § 1605(a)(5) ..................................................................11

Mass. Gen. Laws ch. 152, § 25A(2) ..................................................7

Mass. Gen. Laws ch. 152, § 66 ..................................................7, 8

**Rules**

Fed. R. App. P. 35 ..................................................................2

Fed. R. App. P. 40 ..................................................................2

**Legislative History**

H.R. Rep. No. 94-1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604 ..............6, 13

*Jurisdiction of U.S. Courts in Suits Against Foreign States: Hearings
 on H.R. 11315 Before the Subcomm. on Admin. Law and
 Governmental Relations of the H. Comm. on the Judiciary,* 94th
 Cong. 27 (1976) ..................................................................10

**Treaties and Foreign Legislation**

Canada Government Employees Compensation Act, R.S.C. 1985, c.
G-5 .................................................................................................*passim*

European Convention on State Immunity, E.T.S. 74, art. 5(2)(c)
(1972) ................................................................................................17

U.K. State Immunity Act, 1978 c.33, § 4(2)(c) ......................................17

United Nations Vienna Convention on Consular Relations, Apr. 24,
1963, 21 U.S.T. 77 .............................................................1, 3, 14, 15

**Other**

H. Fox & P. Webb, The Law of Sovereign Immunity 35-38 (3d ed.
2013) ................................................................................................11

https://embassy-finder.com/canada_in_usa ...........................................13

*World Bank Group Directive, Staff Rule 6.11*, §§ 3.01, 5.01, 12.01, 13
(Apr. 9, 2018),
https://policies.worldbank.org/sites/ppf3/PPFDocuments/76ca0393
5c904e98b1269153552ede86.pdf .......................................................13

World Bank Group, *Principles of Staff Employment -- Preamble,
Forward and Principles 1-11, § 1.01* (Aug. 1, 1983),
https://policies.worldbank.org/sites/ppf3/PPFDocuments/Forms/Di
spPage.aspx?docid=2666&ver=current ...............................................13

<u>**RULE 35(b)(1) STATEMENT**</u>

(A)     The panel decision conflicts with *OBB Personenverkehr AG v. Sachs*,

136 S. Ct. 390 (2015) ("*Sachs*"), *Saudi Arabia v. Nelson*, 507 U.S. 349 (1993)

("*Nelson*"), and courts of appeals decisions holding that even in a commercial

context, if the "gravamen" of the complaint is that the plaintiff was wronged by a

State's sovereign or other non-commercial activity, the commercial activity

exception under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §

1605(a)(2), does not apply.

(B)     The panel decision involves questions of exceptional importance and

conflicts with authoritative decisions of other circuits.  It:

(i)     conflicts with FSIA's goals and the U.S. Government's

interpretation of FSIA, is incompatible with U.S. consular practice, and threatens

to impede diplomatic, consular and international organization operations

throughout the United States;

(ii)     conflicts with D.C. Circuit precedent and international law,

including the United Nations Vienna Convention on Consular Relations, Apr. 24,

1963, 21 U.S.T. 77 ("VCCR"), by asserting jurisdiction to enforce state regulations

against a consular policy decision; and

(iii)    conflicts with Second and Fourth Circuit precedents and

international authorities by deeming Merlini's employment "commercial."

1

## INTRODUCTION AND SUMMARY

Pursuant to this Court's Rule 35 and 40, Appellee Canada respectfully

petitions for panel or *en banc* rehearing.

This case concerns two sovereign activities of the Government of Canada:

(1) maintaining and administering a Consulate, and (2) enacting and administering

a global workers compensation regime for Canadian federal government

employees, Canada's Government Employees Compensation Act, R.S.C. 1985, c.

G-5 ("GECA").  Those activities affected Plaintiff Merlini as a consular employee.

Merlini slipped and fell in the Consulate; she exercised her rights under

GECA; and Canada's Minister of Labor awarded her workers compensation, paid

by Canada's Consolidated Revenue Fund ("CRF").  Claiming that the Minister

under-compensated her, Merlini sued Canada under a Massachusetts law that

punishes employers who fail to provide for workers compensation in particular

manners sanctioned by Massachusetts regulations by holding them liable for

workplace injuries regardless of cause.  The district court dismissed her claim, but

the panel majority reinstated it under FSIA's "commercial activities" exception, 28

U.S.C. § 1605(a)(2).  The majority deemed Merlini's consular employment

"clerical," ergo "commercial," and focused on Canada's "failure to comply" with

Massachusetts insurance regulations, to the exclusion of Canada's sovereign

legislation and administration regarding its government employees' compensation.

The decision has broad ramifications. It could impact Canada's Consulates (and Embassy) in 13 U.S. jurisdictions, other nations' embassies and consulates and the World Bank and other international organizations. It misinterprets FSIA and controlling Supreme Court precedent and creates conflicts among federal courts of appeals. It undermines principles of comity, reciprocity and consular independence underlying FSIA and the VCCR. Further, as the United States' amicus brief explained, applying the "commercial activities" exception here harms U.S. foreign policy interests. Enforcing state regulations against foreign and international sovereign missions impedes international cooperation and interferes with federal control of foreign relations, and U.S. missions abroad claim the same independence from host interference that Canada claims here.

## REASONS FOR GRANTING THE PETITION

**A.** **The Panel Decision Conflicts with the Supreme Court's Decisions in *Sachs* and *Nelson*, Decisions of Other Courts of Appeals and FSIA's Text by Misidentifying the Gravamen of the Complaint**

Insofar as relevant, FSIA immunizes a foreign sovereign from suit unless "the action is based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2). The phrase "based upon" requires a court to identify the "'particular conduct' that constitutes the 'gravamen' of the suit." *Sachs*, 136 S. Ct. at 396. In doing so, the majority erred in two respects.

*1.*   *The Panel Erred in Treating Merlini's Claim like an Employment Contract Claim*

*Sachs* and *Nelson* hold that the commercial activity exception does not apply merely because the plaintiff's claim is factually and legally predicated on a commercial relationship in the United States with the foreign sovereign. *Id.* at 395-96; *Nelson,* 507 U.S. at 358.  In both cases, the exception did not apply notwithstanding allegations of "failure to warn" of risks of physical injury stemming from commercial relationships with the sovereign.  *Sachs,* 136 S. Ct. at 396; *Nelson,* 507 U.S. at 363.  Instead, for the exception to apply, the sovereign's commercial activity must supply all "those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case."  *Nelson,* 507 U.S. at 357.  "[T]he entire claim [must] be based upon the [sovereign's] commercial activity."  *Sachs,* 136 S. Ct. at 394 (citation omitted).

The exception applies only where the state "exercises 'only those powers that can also be exercised by private citizens,'" not where the conduct at issue also involves the exercise of "'powers peculiar to sovereigns.'"  *Nelson,* 507 U.S. at 360 (citation omitted).  If, for example, "internal administrative acts" or "legislation" are involved, the State is immune notwithstanding a commercial relationship between the plaintiff.  *Id.* at 361-62 (citations omitted).

The majority deviated from these principles by focusing on the allegedly commercial **relationship** between the parties instead of the ***activity*** of Canada of

4

which Merlini complained. Having deemed Merlini's employment "commercial," it concluded that "the conduct on which her claim is based cannot be divorced from her 'employment relationship' with Canada." *Merlini v. Canada,* 926 F.3d 21, 31 (1st Cir. 2019). But the nexus between the allegedly commercial relationship and Merlini's claim is weaker than in *Sachs* and *Nelson*. Merlini has no claim for breach of contract, and no claim (like Sachs' and Nelson's failure to warn claims) that her commercial expectations were frustrated, since her employment contract incorporated the exclusive Canadian federal employees compensation scheme she seeks to bypass, *see* JA 5, 8 (Compl. ¶¶1, 21); Section B.3, below. Whereas Nelson alleged violence by Saudi Arabia to punish him for whistleblowing as a commercial employee of Saudi Arabia, *see Nelson*, 507 U.S. at 362-63, Merlini alleges no mistreatment by her employer.

Merlini's employment relationship with Canada is, as in *Sachs* and *Nelson*, just one element of her claim. Her "entitle[ment] . . . to relief," *id.* at 357, depends on her slip-and-fall accident and the conflict between GECA — a sovereign act — and the Massachusetts workers compensation regulations. The majority erred by "confus[ing] general activity related to the claim [Merlini's employment] with the specific activity [Canada's exclusive workers compensation program under GECA] upon which the claim is based." *Jungquist v. Sheikh Sultan Bin Khalifa Al Nayhan,* 115 F.3d 1020, 1030 (D.C. Cir. 1997) (according immunity to state

actors' discharge of governmental functions relating to plaintiff's commercial contract for medical treatment). To "look only to the fact of employment for purposes of our 'commercial activity' analysis would allow the exception to swallow the rule of presumptive sovereign immunity codified in the FSIA." *Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek*, 600 F.3d 171, 178 (2d Cir. 2010) (according immunity against claims of negligent supervision of employees). The majority thus created a conflict with *Sachs, Nelson*, and several courts of appeals decisions barring under FSIA claims involving mixed commercial and sovereign activities.[1]

### 2. *The Panel Erred by Focusing on "Failure to Comply" Instead of Canada's Sovereign Activity*

The "'particular conduct' that constitutes the 'gravamen' of [this] suit," *Sachs*, 136 S. Ct. at 396, is Canada's policy decision to apply its workers

---

[1] *See generally Merlini,* 926 F.3d at 45-46 (Lynch, J., dissenting) (highlighting conflicts with *Jungquist, Anglo-Iberia,* and *Gregorian v. Izvestia,* 871 F.2d 1515, 1522 (9th Cir. 1989) (while selling a state-owned newspaper is commercial, determining its content is immune sovereign activity)).

The majority relied on legislative history to hold that Merlini's allegedly "clerical" job duties made her claim "commercial." *See Merlini,* 926 F.3d at 15 (quoting H.R. Rep. No. 94-1487, at 16 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6615). That legislative history addresses only whether "employment" is commercial, not whether all employment-related claims are commercial, and discusses contractual, not regulatory, claims. Anyway, legislative history must yield to *Sachs, Nelson* and FSIA's text. 28 U.S.C. § 1605(a)(2) premises immunity on the sovereign's "activity," not the plaintiff's job description.

compensation scheme to its consular employees. Merlini's sole claim, under Mass. Gen. Laws ch. 152, § 66, entails no inquiry into the terms and conditions of Merlini's employment. Section 66 imposes strict liability on employers who do not comply with Massachusetts workers compensation insurance regulations for the "purpose" of "induc[ing]" and "pressur[ing]" employers to administer workers compensation the Massachusetts way. *Price v. Ry. Exp. Agency*, 322 Mass. 476, 478-79, 78 N.E.2d 13, 16 (1948). Canada could have complied by self-insuring the Massachusetts way, which would effectively require Canada, a sovereign nation, to apply to Massachusetts for a license in order to staff its Consulate, see Mass Gen. Laws ch. 152, § 25A(2); *Merlini*, 926 F.3d at 34 n.7.[2] Instead, Canada provided for workers compensation for its consular employees the Canadian way, under GECA, which ensures funding for claims from Canada's CRF, GECA § 4(6). Merlini's Complaint is based upon that sovereign policy choice: "In sum, the Consulate was acting as a self-insurer without obtaining a license." JA 5 (Compl. ¶1).

The majority acknowledged that Canada's conduct with respect to workers compensation supplied an element of Merlini's claim, but framed it negatively and inaccurately: Canada's "decision to forgo insurance forms part of what may be

---

[2] Canada could avoid liability by operating its Consulate without any U.S. citizen non-policy-making employees. *See Merlini,* 926 F.3d at 31. But doing so would be inconsistent with international practice and effective governance.

understood to be the gravamen of Merlini's claim." *Merlini* 926 F.3d at 32.[3] It

deemed GECA irrelevant because § 66 requires only that Canada "did not comply"

with Massachusetts' regulations — an omission that private employers could also

make. *Id.* at 34 n.7.

The majority's "failure to comply" theory misreads FSIA's text, *Sachs* and

*Nelson*. FSIA immunizes sovereign "activity" from any claim — not just causes of

action that uniquely target sovereigns. To defeat immunity, the gravamen of the

claim must be "a commercial activity carried on in the United States by the foreign

state" or a "commercial activity of the foreign state elsewhere" that impacts the

United States. 28 U.S.C. § 1605(a)(2). "*Activity*" denotes affirmative conduct that

has a locus and a (sovereign or commercial) character. *See Nelson,* 507 U.S. at

357-58. Mere "failure to comply" — *inaction* — has neither. FSIA does not

assign courts the impossible task of distinguishing sovereign from commercial

inaction.

In rejecting "failure to warn" claims, the Supreme Court explained that

giving "jurisdictional significance" to "artful pleading" that recasts sovereign acts

in negative ("failure to . . .") terms would "effectively thwart the Act's manifest

purpose" of providing immunity for sovereign activity. *Sachs*, 136 S. Ct. at 396-

_____

[3] By providing for recourse to its CRF, Canada did not "forgo insurance" (or "go
bare," *id.* at 33).

97; *Nelson*, 507 U.S. at 363.  The majority's "failure to comply" theory has the same effect.  By focusing on what Canada did not do, it ignores the sovereign nature of what it did do.

The gravamen of Merlini's complaint — the thing she claims Canada did wrong — was setting and administering its exclusive rules governing workers compensation for consular employees.  That activity was neither commercial nor located in the United States.  The Canadian Parliament set the rules, providing that "any" employee who is "paid a direct wage or salary" by the Canadian Government, including (regardless of job description) locally-employed consular staff, has an exclusive remedy for employment-related accidents under Canadian laws administered by Canadian officials.  GECA §§ 2, 3(2), 4, 12.  The Minister of Labor administered those rules.  GECA § 7.  Merlini's complaint impugns a quintessentially sovereign activity — legislation — addressing a sovereign subject matter — administrative rules governing consulates.  Sovereign immunity should apply.

**B.     The Panel Decision Involves Questions of Exceptional Importance and Conflicts with Authoritative Decisions of Other Circuits**

*1.     The Panel Decision Conflicts with FSIA's Goals and U.S. Government Views and Practice, and Threatens to Impede Diplomatic, Consular and International Organization Operations throughout the United States*

Paramount U.S. and international interests in respectful, reciprocal and frictionless cooperation and communication between independent sovereigns are recognized and protected by complementary norms. Those norms include foreign sovereign immunity,[4] diplomatic and consular immunity, the act of State doctrine[5] and, under U.S. law, the assignment of foreign relations power to the Federal Executive to prevent undue state and judicial interference.[6] This case implicates each of those norms. The majority denied Canada's sovereign immunity,

---

[4] *See Jurisdiction of U.S. Courts in Suits Against Foreign States: Hearings on H.R. 11315 Before the Subcomm. on Admin. Law and Governmental Relations of the H. Comm. on the Judiciary*, 94th Cong. 27 (1976) (testimony of Monroe Leigh, State Department Legal Advisor) (FSIA promotes comity, reciprocity and "the functioning of all governments by protecting a state from the burden of defending law suits abroad which are based on its public acts.").

[5] *See, e.g., Nnaka v. Federal Republic of Nigeria*, 756 Fed. Appx. 16 (D.C. Cir. 2019). Nnaka, a U.S. citizen, sought to enforce a commercial contract to provide services for Nigeria in the United States. The D.C. Circuit held that Nigeria's disavowal of that commercial relationship in an official diplomatic communication was an act of State immune from challenge in U.S. courts. Similarly, Canada's enactment of GECA § 12, disavowing any obligation to provide workers compensation other than pursuant to Canadian law, should be immune.

[6] *See Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 413-15 (2003).

permitted enforcement of state regulations on Canada's Consulate over U.S. State Department objections,[7] and denied effect to a Canadian statute governing Canadian Government employment.

FSIA's commercial activity exception codifies the "restrictive theory" of sovereign immunity, *see Nelson*, 507 U.S. at 363, which embodies two distinct insights. First, some government entities engage in purely commercial activities. Second, even traditional governmental agencies such as consulates use the commercial marketplace for specific transactions. In the latter case, the sovereign's undertakings and its commercial partners' reasonable expectations of its commercial partners may be enforced, and the forum state may have public policy interests in protecting its marketplace from abuses. However, enforcing on a government agency engaged in traditional sovereign functions affirmative and involuntary regulatory obligations infringes its sovereignty. *See generally* H. Fox & P. Webb, The Law of Sovereign Immunity 35-38 (3d ed. 2013).

Canada submits to U.S. judicial enforcement of specific bargains it makes under U.S. law, and respects U.S. public policy interests in protecting the U.S.

---

[7] *See Merlini,* 926 F.3d at 31-33 & 33 n.5, 38. The majority minimized those objections by noting (*id.* at 38) that the United States proposed a remand for consideration of FSIA's non-commercial tort exception, 28 U.S.C. § 1605(a)(5). But a remand is not the same as a ruling denying immunity, and application of normal tort principles would not impair Canada's sovereignty in the way that penalizing its policy decision to implement GECA does. (If the Court grants rehearing, Canada would welcome an opportunity to rebut the tort arguments in the United States' post-argument brief.)

11

marketplace. However, Canada made no bargain with Merlini to provide her workers compensation under Massachusetts law. Instead, it agreed to compensate her under GECA. Nor does Canada's government employees compensation system abuse the U.S. marketplace or offend federal public policy. Indeed, it is probably consistent with Massachusetts' public policy.[8]

Canada's position is also consistent with international practice. Other nations have analogs to GECA. For example, the Federal Employees' Compensation Act, 5 U.S.C. § 8101, asserts the U.S. State Department's right to exclusively determine and administer workers compensation for its employees worldwide, whatever their job function and citizenship. *See* Amicus Brief of United States at 18-19. International organizations such as the World Bank — which, under *Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759 (2019), are subject to the commercial activity exception[9] — have similar regimes, determining workers compensation through internal administrative procedures rather than U.S. courts.

---

[8] Massachusetts regulators held Massachusetts' workers compensation insurance regulations inapplicable to Canada. *Merlini v. Consulate Gen. of Canada*, 2015 WL 1781184, at *3-*4 (Mass. Dep't Indus. Accidents. Apr. 9, 2015). Even if that ruling lacks preclusive effect, it demonstrates that the United States lacks a strong sovereign interest in enforcement, while Canada has a strong sovereign interest in determining the rules under which its consulates operate.

[9] *Jam* was decided after this case was briefed and argued. Rehearing could enable this Court to receive briefing regarding this case's implications for international organizations.

*See, e.g., World Bank Group Directive, Staff Rule 6.11*, §§ 3.01, 5.01, 12.01, 13 (Apr. 9, 2018), https://policies.worldbank.org/sites/ppf3/PPFDocuments/76ca03935c904e98b1269 153552ede86.pdf.[10]

The panel decision threatens this cooperative, reciprocal international practice. Canada's diplomatic and consular operations would be substantially impeded by applying the diverse workers compensation insurance (and potentially other) regulations of 13 different U.S. jurisdictions.[11] The same is likely true for other nations.[12] That burden could harm international cooperation by causing

---

[10] The World Bank Group takes the position that "[t]he World Bank and the IFC (the Organizations) are not subject to the employment legislation of any of their member countries." World Bank Group, *Principles of Staff Employment — Preamble, Forward and Principles 1-11*, § 1.01 (Aug. 1, 1983), https://policies.worldbank.org/sites/ppf3/PPFDocuments/Forms/DispPage.aspx?do cid=2666&ver=current.

[11] Canada employs U.S. citizens, subject to GECA, at consulates in 12 U.S. states and its Washington, D.C. Embassy. *See* https://embassy-finder.com/canada_in_usa. By subjecting consular operations to individual state regulatory schemes, the panel decision undermines FSIA's goal of "uniformity in decision, which is desirable since a disparate treatment of cases involving foreign governments may have adverse foreign relations consequences." H.R. Rep. No. 94-1487, at 13 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6611.

[12] The majority noted that "some foreign consulates as well as the Quebec Government Office in Boston" complied with the Massachusetts law. *Merlini,* 926 F.3d at 37. The Province of Quebec's office is neither a consulate nor subject to GECA. Some countries may not share Canadian and U.S. objections to local regulatory interference with consular employment, but that does not make those objections any less sovereign.

nations to curtail or re-locate consular operations or exclude U.S. citizens from consular employment. The same problems would arise for the World Bank and other international organizations, and could imperil the United States' status as their location of choice. And, under principles of reciprocity, the United States' diplomatic and consular operations could be impeded.

> 2. *The Panel Decision Conflicts with D.C. Circuit Precedent and International Law by Asserting Jurisdiction to Enforce State Regulations Against a Consular Policy Decision*

The panel decision erred, and created conflicts with D.C. Circuit precedent and international law, by asserting jurisdiction to enforce Massachusetts regulations against Canada's sovereign policy decision (to condition employment on GECA) about how to operate Consulates. In *MacArthur Area Citizens Ass'n v. Republic of Peru*, 809 F.2d 918 (D.C. Cir. 1987), the D.C. Circuit held that FSIA immunized construction work at a Naval Attache's chancery from local zoning and nuisance laws, since "operation of a chancery is, by its *nature* . . . governmental, not commercial." *Id.* at 920; *see Merlini,* 926 F.3d at 45-46 (Lynch, J., dissenting). The Canadian Consulate should likewise be immune from enforcement of state regulations.

Consulates serve important international relations functions. *See generally* VCCR art. 5. Consular employees handle sovereign documents and sensitive diplomatic communications. *See* VCCR art. 35. The VCCR therefore protects

Consulates from host state interference. Consular premises, documents and communications are immune from local jurisdiction, VCCR arts. 31, 33, 35; consular premises and fees are immune from local taxation, VCCR arts. 30, 39; and consular officers are immune from local jurisdiction with respect to "acts performed in the exercise of consular functions," VCCR art. 43. The VCCR requires consulates to carry insurance under local law for vehicular accidents, VCCR art. 56, but not intra-consular matters such as workers compensation.

FSIA was intended to codify international law principles, *see, e.g., Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.,* 137 S. Ct. 1312, 1319-21 (2017), and should be read in harmony with the VCCR. "[A]cts performed in the exercise of consular functions," such as deciding on what terms to offer consular employment, should be immune under FSIA as they are under VCCR art. 43. Local insurance requirements not enforced under VCCR art. 56 should not be enforced under FSIA.

> 3. *The Panel Decision Conflicts with Second and Fourth Circuit Precedents and International Authorities by Deeming Merlini's Consular Employment "Commercial"*

Section A.1 above argues that the majority erred in treating Merlini's claim like an employment contract claim. It also erred in three respects, implicating conflicts with U.S., international and foreign authorities, in treating Merlini's consular employment as "commercial." *Merlini,* 926 F.3d at 28-29, 31.

First, the majority's focus on Merlini's individual job functions and nationality, *see id.* at 31, conflicts with Second Circuit precedent, which focuses on the activity or function of the sovereign employing office, not the individual employee's activity or status. *Kato v. Ishihara,* 360 F.3d 106, 111-14 (2d Cir. 2004); *see also El-Hadad v. United Arab Emirates,* 496 F.3d 658, 664 n.2 (D.C. Cir. 2007) (identifying a circuit split regarding non-civil-servant claims, which the panel decision exacerbates). *Kato*'s approach is particularly apt where the conduct at issue is a global policy decision by Canada, not an individual employment action.

Second, with an incomplete record, the majority assumed that Merlini's duties were "purely clerical." *Merlini,* 926 F.3d at 31. However, Merlini's agreed job description included handling (with "discretion"), drafting and researching official consular documents, organizing the Consul's travel, itinerary, meetings and budget, providing direction and guidance to other consulate staff and, initially, handling "classified or sensitive material" and attending consular "management committee meetings." SA 63-68.[13] Merlini's employment was subject to

---

[13] "SA" refers to the Supplemental Appendix Canada moved the Court to add to the record, and/or take judicial notice of, today. It contains Merlini's executed employment contract and job description and Canada's Locally-Engaged Staffs' Terms and Conditions Regulations and Boston LES Handbook, which together comprise "our Locally-Engaged Employee Handbook" incorporated by reference in Merlini's contract, SA 62. Those documents reflect and clarify allegations in Merlini's Complaint, and their authenticity and significance (as executed and

16

Canadian "Government requirements with respect to security clearance." SA 61.

Like jobs to which sovereign immunity has been applied, her job involved

uniquely governmental subject-matter and security concerns. *See, e.g., Butters v.*

*Vance Int'l, Inc.,* 225 F.3d 462, 465 (4th Cir. 2000) (security guard). In *Crum v.*

*Kingdom of Saudi Arabia,* 2005 WL 3752271, *3 (E.D. Va. July 13, 2005), FSIA

immunity applied to an embassy chauffeur's employment; Merlini was responsible

for coordination and scheduling with the Consul's chauffeur and overseeing the

Consul's itinerary and travel arrangements, *see* SA 64-65, 67-68.

Finally, the majority's emphasis on categorizing the plaintiff employee by

individual duties and citizenship may appear consistent with foreign and

international sovereign immunity laws which, unlike FSIA, contain special

provisions for employment cases. However, those laws effectuate parties'

agreements on immunity from host state jurisdiction regardless of employee

category. *See, e.g,* European Convention on State Immunity, E.T.S. 74, art. 5(2)(c)

(1972); U.K. State Immunity Act, 1978 c.33, § 4(2)(c). Here, Merlini agreed with

Canada that GECA would govern workers compensation claims to the exclusion of

---

official government documents) are evident. Jurisdictional factual issues should be
resolved without delay in FSIA cases, *see Bolivarian Republic,* 137 S. Ct. at 1317,
and deferring consideration of those documents to a renewed motion to dismiss
upon remand could entail inefficient and piecemeal adjudication. Canada therefore
respectfully submits that the Court should consider those documents now.

U.S. law.  *See* JA 5, 8 (Compl. ¶¶ 1, 21); SA 62, 87 (¶ 4.2.12), 129.  Thus, under freedom-of-contract principles, immunity should apply.

## CONCLUSION

The Court should rehear this case.

Respectfully submitted,

*/s/  Simon A. Steel*

Simon A. Steel[*]
(CA1 Bar No. 1189353)
Laura A. Seferian[*]
(CA1 Bar No. 1189422)
DENTONS US LLP
1900 K Street NW
Washington, DC 20006
(202) 496-7077
simon.steel@dentons.com
*Counsel for Appellee Canada*

July 24, 2019

---

[*] Steel admitted in New York only; Seferian in Illinois and Virginia only.

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the word limit of Fed. R. App. P. 35(b)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. 32(f), this document contains 3,898 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman type.

*/s/ Simon A. Steel*
Simon A. Steel
*Counsel of Record for*
*Appellee Canada*

July 24, 2019

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2019, I electronically filed the foregoing

document with the United States Court of Appeals for the First Circuit by using the

CM/ECF system. I certify that the following parties or their counsel of record are

registered as ECF Filers and that they will be served by the CM/ECF system:

> Theodore J. Folkman, Esq., counsel of record for the Appellant Cynthia L. Merlini.
>
> Sharon Swingle, Esq. and Michael Shih, Esq., counsel of record for *amicus curiae* U.S. Department of State.

*/s/ Simon A. Steel*
Simon A. Steel
*Counsel of Record for*
*Appellee Canada*

July 24, 2019
