UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

| |
|---|
| CYNTHIA L. MERLINI, |
| Plaintiff-Appellant, |
| vs. |
| CANADA, |
| Defendant-Appellee |

No. 17-2211

**APPELLANT'S OPPOSITION TO
MOTION TO STAY THE MANDATE**

Canada's motion to stay the mandate should be denied. This Court grants a stay only in "unusual cases." *Wald v. Regan,* 708 F.2d 794, 803 (1st Cir. 1983) (Breyer, J.), *rev'd on other grounds,* 468 U.S. 222 (1984). To obtain a stay, Canada has to show that a petition for a writ of certiorari would "present a substantial question" and that there is "good cause for a stay." Fed. R. App. P. 41(d)(1). We focus here on the requirement to show good cause.[1]

---

[1] We do not seek to rebut Canada's argument that the case presents a real question, except to the extent Canada suggests that the strong dissent from the petition for rehearing *en banc* or the Court's evenly divided vote suggests that the Supreme Court is likely to grant a petition for a writ of certiorari. In *Igartúa v. United States,* 654 F.3d 99 (1st Cir. 2011), where residents of Puerto Rico asserted a constitutional right to elect representatives to the House of Representatives, the Court, denied a petition for rehearing en banc by a 3-3 vote. The case was so contentious that the judges who voted to deny the petition (Lynch, C.J., and Boudin and Howard, JJ.), issued an opinion in support of their view, Judge Howard

Even when our own government asserts that a stay pending a petition for a writ of certiorari is necessary in order to avoid bad foreign policy outcomes, this Court does not lightly grant a stay. In *Wald,* the government asserted that a stay of the Court's decision enjoining a Treasury Department regulation that burdened the plaintiff's right to travel to Cuba would have "significant implications for foreign policy." *Wald,* 708 F.2d at 802. The Court nevertheless denied a stay pending a petition for certiorari "[a]fter considering the various harms likely to be caused by a stay, the rights of the parties, the practical implications of the decision, and the likelihood of the government's success in further proceedings." *Id.* at 803-04.[2] Here, these factors weigh against a stay.

A. *Canada Would Suffer No Real Harm If The Mandate Issues, And Merlini Would Be Harmed By Further Delay.*

Canada would suffer no real harm upon remand that it has not already voluntarily undertaken. *See United States v. Pleau,* 680 F.3d 1, 23-35 (1st Cir. 2012) (Toruella, J. dissenting) (movant must show risk of irreparable harm or prejudice). The FSIA is meant to shield foreign sovereigns not just from liability but from the burdens of litigating in American courts, and in general foreign

---

wrote a separate concurrence, and each of the three dissenters (Torruella, Lipez, and Thompson, JJ.) wrote separately. The Supreme Court nevertheless denied certiorari. *Igartúa v. United States,* 566 U.S. 986 (2012).

[2] The Supreme Court later stayed the mandate, without giving reasons, and of course, without reference to Fed. R. App. P. 41. *Regan v. Wald,* 463 U.S. 1223 (1983).

sovereigns have an interest in avoiding the need to appear in US proceedings. *See Foremost-McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438, 443 (D.C. Cir. 1990). But in the administrative proceedings earlier in the history of this dispute, Canada voluntarily litigated both the facts and the law in the Department of Industrial Accidents. It participated in the DIA administrative proceedings, supposedly as an *amicus curiae* (Br. of May 23, 2013 at 3),[3] but in reality it litigated the Trust Fund's case against Merlini on the Trust Fund's behalf. It hired Boston lawyers to question witnesses, including Merlini, and to present arguments to the DIA, purportedly as an *amicus.* In particular, at the hearing of December 11, 2012, attended by a consul and another representative of the Consulate (Tr. vol. 1 at 4), which was continued on January 18, 2013, Canada's lawyer cross-examined one of Merlini's witnesses at length (Tr. vol. 1 at 11-15, 51-73, 79). The Trust Fund nominally called a Canadian government witness and also an expert witness on Canadian law to testify, but as the transcript reflects, Canada's lawyer conducted the substance of the direct examinations (Tr. vol. 1 at 80-95, vol. 2 at 15-62, 99-100, 104-05).[4] At the continuation of the hearing on February 20, 2013, Canada's lawyer questioned Merlini at length about her medical condition and her

---

[3] Canada's brief to the Department of Industrial Accidents is attached as Exhibit 1.
[4] The transcripts of the three hearing days are attached to this Opposition as Exhibits 2 to 4.

disability as well as her job qualifications and her efforts to obtain compensation. (Tr. vol. 3 at 51-82, 85-86).

In short, Canada shouldered the burden of litigating the merits of Merlini's claim against the Trust Fund, even though, in its view, it had no obligation to do so. The burdens of the early stages of a civil action that Canada will face if the mandate issues—answering the complaint, participating in a scheduling conference, and making initial disclosures—pale in comparison to the activities Canada undertook earlier of its own accord.

On the other hand, significant public and private interests weigh against a stay. The Commonwealth has an interest in ensuring that injured Massachusetts employees are compensated: the workers' compensation law is a "remedial statute" meant to protect the "health, safety, and welfare of employees." *Janocha's Case,* 93 Mass. App. Ct. 179, 185, 100 N.E.3d 740, 746 (2018). And Merlini has been left impoverished by her disability. Since the Reviewing Board's 2015 decision holding that she was not entitled to benefits from the Worker's Compensation Trust Fund, her exclusive regular income has been her Social Security disability benefit, which today is approximately $1,786 per month, after the deduction for Medicare premiums. She has had to default on debts, is at risk of losing her home, and cannot afford further delay. She has been left unable to work and in need of the prompt compensation to which injured Massachusetts workers are entitled.

B.  *The Decision Will Have No Immediate Practical Implications.*

The dissent suggests that the Court's decision will have real-world consequences for embassies and consulates around the world. But nothing in the record suggests that that is so. The record shows that many foreign consulates and even a Canadian provincial trade office in the United States *already* complied with state workers' compensation laws even before this Court's decision. *Merlini,* 926 F.3d at 37. Nothing in the record suggests that Massachusetts workers' compensation authorities or any other state's workers' compensation authorities have any plans to make any changes to their regulatory schemes as they relate to foreign governmental employers. Nor is there evidence that the Canadian government or any other foreign government plans to make changes in their treatment of American consulates abroad following the decision. Most likely interested governmental parties will wait for the final resolution of this case—either a denial of a petition for certiorari or a Supreme Court decision—before making any changes. The situation was different in *Wald,* where the government asserted that if the decision stood, it would be required to follow statutory procedures before tightening travel restrictions, which could impose a serious burden on the Executive in a foreign policy emergency. *Wald,* 708 F.2d at 803. But even that concern was insufficient to justify a stay.

C.     *The Outcome In The Supreme Court Is Unlikely To Change.*

In light of the dissents from the panel's decision and from the denial of the petition for rehearing *en banc,* Merlini does not argue that the case presents no question on which judges could disagree, although if Canada does file a petition for a writ of certiorari, she will show that the case is not certworthy. For now, though, it is enough to show that it is "unlikely that the Supreme Court will reach a different decision," *Wald,* 708 F.2d at 803. The dissent asserts that this Court's decision misconstrues several Supreme Court decisions, but in light of the panel's decision, this Court's view has to be that the dissent is wrong on this point. The dissent also argues that the Court's opinion is at odds with decisions in several circuits, but the panel's opinion considered precedents from around the country without identifying a circuit conflict.

For these reasons, Canada's motion should be denied.

Respectfully submitted,

/s/ Theodore J. Folkman
Theodore J. Folkman (No. 81828)
PIERCE BAINBRIDGE BECK
PRICE & HECHT, LLP
One Liberty Square
Boston, Mass. 02109
(617) 229-5415
tfolkman@piercebainbridge.com

*Counsel to Cynthia L. Merlini*

Dated: October 30, 2019

## CERTIFICATE OF COMPLIANCE

1. This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the document contains 1,358 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word for Office 365 in 14 pt. Times New Roman type.

/s/ Theodore J. Folkman
Theodore J. Folkman

CERTIFICATE OF SERVICE

I certify that on October 30, 2019, I electronically filed this document using the Court's CM/ECF system. The following counsel of record are registered filers and will be served by the CM/ECF system:

    Simon A. Steel, Esq., counsel for Canada
    Michael Shih, Esq., and Sharon Swingle, Esq., counsel for the Department of State

/s/ Theodore J. Folkman
Theodore J. Folkman